**VIRGINIA: IN THE CIRCUIT COURT OF WYTHE COUNTY**

VALIDATE CASE PAPERS
RCPT : 23000006665
DATE : 06/16/2023   TIME: 09:11
CASE : 197CL23001094-00
ACCT : FERGUSON, KIRA
AMT. : $85.68

KIRA FERGUSON, individually and )
as Executrix of the )
ESTATE OF WILLIAM S. FERGUSON, )
DECEASED, and SHANNON FERGUSON, )
in her own right, )
*Petitioners,* )
)
)   Case No.:
)
v. )
)
SUSAN DOONAN BIELSKI, )
*Defendant.* )
)

## COMPLAINT

COMES NOW Plaintiffs, Kira Ferguson, individually and as the Executrix of the Estate

of William S. Ferguson, Deceased, and Shannon Ferguson, in her own right, by and

through counsel, hereby files this Complaint and in support thereof states as follows:

## THE PARTIES

1.    Plaintiff, Kira Ferguson, is the biological daughter and Executrix of her late father's

estate, William S. Ferguson, Deceased.

2.    Plaintiff, Shannon Ferguson, resides in the Commonwealth of Pennsylvania.

3.    Plaintiff, Shannon Ferguson, is likewise the biological daughter of the Decedent,

William S. Ferguson.

4.    Defendant, Susan Doonan Bielski, resides in the state of New Hampshire.

5.    Defendant, Susan Doonan Bielski, is the stepdaughter of the decedent, William S.

Ferguson, by and through his marriage to Joyce Doonan, who preceded him in death.

## JURISDICTION AND VENUE

6.    This matter stems from the untimely death of Mr. William Ferguson, who took his



own life, on October 14, 2021, with the assistance, provocation, and participation of Defendant, Susan Doonan Bielski, in Wythe County Virginia.

7.      Plaintiff, Kira Ferguson, resides in Wythe County, Virginia.

8.      Plaintiff, Kira Ferguson, as of the filing of this Complaint, serves as the Executrix for William S. Ferguson's Estate, in Wythe County, Virginia.

9.      Various real properties are located in Wythe County, Virginia, and are a part of the Estate at issue in this matter.

## **FACTUAL BACKGROUND**

10.     William S. Ferguson and Joyce Doonan were married for approximately thirty (30) years.

11.     At the time of their union, both William and Joyce had children from previous marriages.

12.     Joyce Doonan (deceased) had two biological daughters, Sandy Doonan and Susan Doonan Bielski.

13.     Defendant, Susan Doonan Bielski, lived in and was educated in New England at various boarding schools, during college and through law school.

14.     William Ferguson's biological daughters are Kira Ferguson and Shannon Ferguson, Plaintiffs in this matter.

15.     Decedent, William S. Ferguson, was able to acquire various properties, which included a mobile home park, garages, storage units, horse farm, as well as a residence that sits on thirty-two (32) acres of land.  All such assets are believed to be in Wythe County, Virginia.

16.     Joyce Doonan, mother to Defendant, graduated from medical school, and ultimately, became an anesthesiologist working in and around Wytheville, Virginia, for over twenty

(20) years.

17.    Together, the Decedents, Joyce and William, were able to build a comfortable life for themselves and amassed an Estate worth approximately $2,000,000.00.

18.    Unfortunately, in January 2021, Joyce Doonan passed unexpectedly, thereby, leaving Mr. William Ferguson her entire stare of the estate.

19.    Shortly, after Joyce Doonan's death, in February 2021, Mr. Ferguson changed his Last Will and Testament.

20.    Originally, Mr. Ferguson's Will appointed Joyce as his Executrix and bequeathed all his assets to her. He only changed the will after her passing.

21.    The current Last and Testament dated February 24, 2021, directed that all assets be sold, with the proceeds to be divided as follows: Sandy Doonan 30%, Susan Doonan Bielski 30%, Kira Ferguson 20% and Shannon Ferguson 20%.

22.    Additionally, the Will appointed Sandy Doonan to serve as the Executrix of the Estate, however, Sandy Doonan relinquished her right so serve as Executrix.

23.    Mr. Ferguson's last wishes specified that if Sandy was unable or unwilling to serve, Kira Ferguson was to then be appointed in her place.

24.    In the months following his wife's death, Mr. Ferguson fought with depression. Mr. Ferguson struggled to cope with the death of his wife, having been diagnosed by his doctor with depression and suicidal ideations.

25.    Medical records reflect that he should reach out to a crisis center for help and that various medications were suggested to him and/or prescribed.

26.    In addition to grieving the loss of his wife, Mr. Ferguson was also battling health concerns that included kidney issues and partial blockage of his carotid artery.

27.    In September 2021, Mr. Ferguson suffered a stroke. Although it was not debilitating, Mr. Ferguson still experienced residual effects.  Most significantly, he became physically weaker, increasing his risk of falls.

28.    His September, 2021, hospitalization saw his doctor additionally discuss the blockages to his carotid arteries.  Physicians at Roanoke Memorial Hospital opined that they did not believe that Mr. Ferguson was a good surgical candidate due to his renal issues and, thus, were reluctant to address and/or treat the blockages.

29.    Shortly after his discharge from Roanoke Memorial, Mr. Ferguson's daughter, Kira Ferguson, decided to reach out to the hospital at the University of Pennsylvania in Philadelphia.

30.    After speaking with a doctor at the Hospital, both Kira and Mr. Ferguson were inspired with newfound confidence that a surgeon there would be able to perform the necessary operation to unblock his arteries, leading to Mr. Ferguson making plans to go to Philadelphia with his daughter, Kira.

31.    Mr. Ferguson's now optimistic outlook post-surgery rekindled his historic interest in modifying race cars and racing them himself.

32.    In fact, Mr. Ferguson asked his long-time racing partner to finish building a car that he now planned to race.

33.    Delivery of said car occurred September 26, 2021, and led to Mr. Ferguson personally test driving it.

34.    Despite this new hopefulness, Mr. Ferguson still struggled to cope with the death of his wife, as well as his own health issues, with friends noting that he still seemed sad.

35.    This did not deter him though as he continued to make plans to go to the hospital of the University of Pennsylvania.

36.     On October 11, 2021, Defendant, Susan Doonan Bielski, came to Virginia unexpectedly.

37.     At that time, another family member named Perry was scheduled to take Mr. Ferguson to Pennsylvania for his medical appointments.

38.     Defendant asserted that she was going to take Mr. Ferguson to Pennsylvania, causing Perry to cancel his plans to do so.

39.     The expectation was that on October 14, 2021, Mr. Ferguson would travel to Pennsylvania and, once there, he would be admitted for evaluation and treatment of his blockages.

40.     This trip did not occur.

41.     In the three (3) days that Defendant was alone with Mr. Ferguson prior to the trip, she initiated and sustained a systematic push to encourage his suicide.

42.     Home surveillance and other evidence has led Plaintiffs to believe that Defendant spent the three days telling Mr. Ferguson that he had nothing to live for.

43.     Further, that same surveillance footage has led Plaintiffs to believe that Defendant also reinforced and encouraged Mr. Ferguson to dwell on his wife's death.

44.     On the morning of October 14, 2021, Defendant took her mother's ashes and began spreading them under a tree on the property that her mother and Mr. Ferguson used to sit under together.

45.     Plaintiff's believe that this act on Defendant's part drove Mr. Ferguson to a new low emotionally.

46.     Shortly after Defendant scattered Mr. Ferguson's wife's ashes, he took his life.

47.     The in-home camera system also shows Defendant's active encouragement in Mr. Ferguson's preparation of his suicide note, going so far as to helping him spell out the word

"*arrangements*" in said note.

48.     Evidence and belief suggest that Defendant additionally directed where he should shoot himself ("not in the head... or... in the house"), given that the chairs in the yard were arranged nearly in the exact spot where Defendant had spread the ashes, being also the location where Mr. Ferguson then shot himself.

49.     Upon finishing his suicide note, Mr. Ferguson prepared the checks for his funeral arrangements, and then retrieved his .380 Ruger and began loading the weapon.

50.     Once loaded, Mr. Ferguson's walked outside to the area of the ashes and chairs. Video shows Defendant walking outside to the same area several seconds later.

51.     Mr. Ferguson's dog remained kept in his office, facing the yard where he eventually shot himself.

52.     Defendant took up the seat next to Mr. Ferguson a few feet away.

53.     Mr. Fergson aimed the gun at his chest and pulled the trigger while Defendant sat and watched.

54.     After Mr. Ferguson shot himself, he did not die instantly but, instead, suffered profoundly.

55.     Defendant took no immediate steps to render any aid or call 911 for help.

56.     Instead, she went to seek out a neighbor down the road, at which time she did finally call 911 at the neighbor's behest and direction.

57.     The neighbor came over to Mr. Ferguson's house and immediately told her to call the police as he began to try to help Mr. Fergson.

58.     He instructed her to get him a towel so that he could apply pressure to the wound.

59.     According to the neighbor, Defendant did not move with the haste that the

circumstances warranted.

60.     Defendant did give a self-serving statement to the police upon their arrival on scene.

61.     Defendant, upon Plaintiffs' information and belief, waited only two hours before she contacted the attorney who wrote Mr. Ferguson's will requesting a "reading of the will" in order to find out what her share of the Estate would be.

62.     Defendant continued to press the attorney numerous times inquiring about the Estate.

63.     It is believed that on the day of Mr. Ferguson's death Susan called the attorney even before she called her sisters.

64.     Defendant clearly acted at all times with callous disregard for the feelings and concerns of others or the well-being of Mr. Ferguson.

65.     Defendant's primary concern was with her own enrichment from this tragic event.

66.     Sadly, Mr. Ferguson's may have dog witnessed the entire event, with footage showing the dog wailing as Mr. Ferguson shot himself.

67.     To add insult to injury, Defendant took the dog home with her.

## PROCEDURAL POSTURE

68.     Mr. William Ferguson died on October 14, 2021.

69.     Shortly thereafter, Sandy Doonan renounced her status as Executrix.

70.     Being next in line pursuant to Mr. Ferguson's Will, Plaintiff, Kira Ferguson, accepted her role as Executrix.

71.     In October 2021, probate of the Estate began in Wythe County, Virginia.

72.     Assets are still in the process of being appraised and prepared for sale.

## COUNT I - INJUNCTIVE RELIEF

73.     Plaintiffs incorporate by reference paragraphs 1 through 72 as if fully set forth herein.

74.     Defendant took an active role in facilitating Mr. Ferguson's suicide.

75.     In-home footage of the suicide corroborates this fact.

76.     Virginia Code § 8.01-622.1(a) states that:

*"Any person who knowingly and intentionally, with the purpose of assisting another person to commit or attempt to commit suicide, (i) provides the physical means by which another person commits or attempts to commit suicide or (ii) participates in a physical act by which another person commits or attempts to commit suicide shall be liable for damages as provided in this section and may be enjoined from such acts."*

77.     Defendant knowingly and intentionally assisted Mr. Ferguson to commit suicide.

78.     Additionally, the same statute states that:

*(c) A spouse, parent, child or sibling of a person who commits or attempts to commit suicide may recover compensatory and punitive damages in a civil action from any person who provided the physical means for the suicide or attempted suicide or who participated in a physical act by which the other person committed or attempted to commit suicide.*

*See* VA Code Ann. § 8.01-622.1(c).

79.     Plaintiffs, as the children Mr. Ferguson, are deprived of their father due to the callous actions and conduct of Defendant, Susan Doonan Bielski, who preyed on his depression and health concerns for her own personal financial benefit.

80.     Defendant had direct and personal knowledge of Mr. Ferguson's mental state and took no steps to contact authorities in order to avoid his suicide.

81.     Defendant's conduct was tantamount to "grooming" Mr. Ferguson to believe that suicide was the only path to ending his depression and mental anguish.

82.     Defendant, an attorney by trade, has a heightened awareness of the importance of mental health issues as they affect human behavior and is expected to assist persons who may harm

themselves or others.

83.    Defendant did not contact any person, professional, or organization to assist her step-father in his suicidal depression.

84.    Defendant oversaw all aspects of Mr. Ferguson's suicide, have aided him in the writing of his suicide note, selecting the location where he would eventually kill himself (spreading her mother's ashes there), arranging two plastic lawn chairs next to one another, to only sit down in one to wait for Mr. Ferguson to pull the trigger, and to then render no substantive aid as he sat dying.

85.    Defendant's stood to personally profit from this conduct as an heir to the Estate, a fact that she knew at the time she was orchestrating this tragedy.

86.    Mr. Ferguson is survived by certain beneficiaries who have sustained financial and pecuniary loss as a result of the death of their father, suffering mental anguish, emotional loss and companionship as children of Mr. Ferguson.

## COUNT II – WRONGFUL DEATH

87.    Plaintiffs incorporate by reference paragraphs 1 through 86 as if fully set forth herein.

88.    Defendant's conduct was willful and wanton and demonstrated a complete and total disregard for the wellbeing of Mr. Furguson.

89.    Defendant owed Mr. Ferguson a duty of reasonable care given her awareness of his ongoing anguish and suicidal ideations.

90.    Defendant's encouraging Mr. Ferguson to commit suicide was wholly consistent with a breach of this duty.

91.    But for Defendant's conduct, Mr. Ferguson would have likely continued to live.

92.    Had Mr. Furguson survived, he would have had his own claim again Defendant in this matter due to the above consideration.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.    Enter judgment against Defendant for compensatory damages in the amount of not less than $2,000,000.00, or such other amount as shall be proven at trial, with prejudgment interest as applicable.

B.    Enter judgment against Defendant for punitive damages in the amount of $4,000,000.00.

C.    Enjoin Defendant from receiving any portion of the Estate of William S. Ferguson.

D.    Impose a constructive trust over any real or personal property Defendant in entitled to pursuant to the terms of the Will of William S. Ferguson, Deceased.

E.    Name the remaining heirs, pursuant to the Will of William S. Ferguson, as the sole beneficiaries of the trust.

F.    Divide Defendant's share of the Estate, once in trust, evenly between the remaining heirs/beneficiaries pursuant to the Will/constructive trust.

G.    For an award of attorney's fees and costs from Defendant as a result of her violation of Virginia law and the need for Plaintiffs to prosecute this matter.

H.    For any other relief appropriate under the circumstances.

I.    For a jury trial on this matter.

**KIRA FERGUSON, individually and
as Executrix of the
ESTATE OF WILLIAM S. FERGUSON,
DECEASED, and SHANNON FERGUSON,
in her own right.**
*by Counsel*

COUNSEL:

Flux J. Neo, Esq.
Virginia State Bar No. 78873
Flux J. Neo Law Firm, PLLC
P.O. Box 188
Tazewell, VA 24651
Phone: (276) 988-7996
Fax: (276) 644-2622
Email: Office@NeoLaw1.com


PRO HAC VICE COUNSEL PENDING:

Gerard K. Schrom /s/

Gerard K. Schrom, Esq.
Pennsylvania State Bar No. 39282
Schrom and Schaffer, P.C.
4 West Front Street
Media, PA 19063
Phone: (610) 565-5050
Fax: (610) 565-2980
Email: gschrom@schromandshaffer.com