**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

CLERK'S OFFICE U.S. DISTRICT. COURT
AT ABINGDON, VA
FILED

OCT 0 2 2023

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

| | | |
|---|---|---|
| **KIRA FERGUSON, ET AL.** | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 1:23CV32 |
| | ) | |
| **SUSAN DOONAN BIELSKI** | ) | |
| Defendant. | ) | |

State Court records received from Wythe County Circuit Court.

**VIRGINIA: IN THE CIRCUIT COURT OF WYTHE COUNTY**

VALIDATE CASE PAPERS
RCPT : 23000006665
DATE : 06/16/2023 TIME: 09:11
CASE : 197CL23001094-00
ACCT : FERGUSON, KIRA
AMT. : $85.68

KIRA FERGUSON, individually and )
as Executrix of the )
ESTATE OF WILLIAM S. FERGUSON, )
DECEASED, and SHANNON FERGUSON, )
in her own right, )
*Petitioners,* )
                               )        **Case No.:**
                               )
**v.** )
                               )
**SUSAN DOONAN BIELSKI,** )
*Defendant.* )

## COMPLAINT

COMES NOW Plaintiffs, Kira Ferguson, individually and as the Executrix of the Estate

of William S. Ferguson, Deceased, and Shannon Ferguson, in her own right, by and

through counsel, hereby files this Complaint and in support thereof states as follows:

## THE PARTIES

1.      Plaintiff, Kira Ferguson, is the biological daughter and Executrix of her late father's

estate, William S. Ferguson, Deceased.

2.      Plaintiff, Shannon Ferguson, resides in the Commonwealth of Pennsylvania.

3.      Plaintiff, Shannon Ferguson, is likewise the biological daughter of the Decedent,

William S. Ferguson.

4.      Defendant, Susan Doonan Bielski, resides in the state of New Hampshire.

5.      Defendant, Susan Doonan Bielski, is the stepdaughter of the decedent, William S.

Ferguson, by and through his marriage to Joyce Doonan, who preceded him in death.

## JURISDICTION AND VENUE

6.      This matter stems from the untimely death of Mr. William Ferguson, who took his

own life, on October 14, 2021, with the assistance, provocation, and participation of Defendant, Susan Doonan Bielski, in Wythe County Virginia.

7.      Plaintiff, Kira Ferguson, resides in Wythe County, Virginia.

8.      Plaintiff, Kira Ferguson, as of the filing of this Complaint, serves as the Executrix for William S. Ferguson's Estate, in Wythe County, Virginia.

9.      Various real properties are located in Wythe County, Virginia, and are a part of the Estate at issue in this matter.

## FACTUAL BACKGROUND

10.     William S. Ferguson and Joyce Doonan were married for approximately thirty (30) years.

11.     At the time of their union, both William and Joyce had children from previous marriages.

12.     Joyce Doonan (deceased) had two biological daughters, Sandy Doonan and Susan Doonan Bielski.

13.     Defendant, Susan Doonan Bielski, lived in and was educated in New England at various boarding schools, during college and through law school.

14.     William Ferguson's biological daughters are Kira Ferguson and Shannon Ferguson, Plaintiffs in this matter.

15.     Decedent, William S. Ferguson, was able to acquire various properties, which included a mobile home park, garages, storage units, horse farm, as well as a residence that sits on thirty-two (32) acres of land. All such assets are believed to be in Wythe County, Virginia.

16.     Joyce Doonan, mother to Defendant, graduated from medical school, and ultimately, became an anesthesiologist working in and around Wytheville, Virginia, for over twenty

(20) years.

17.      Together, the Decedents, Joyce and William, were able to build a comfortable life for themselves and amassed an Estate worth approximately $2,000,000.00.

18.      Unfortunately, in January 2021, Joyce Doonan passed unexpectedly, thereby, leaving Mr. William Ferguson her entire stare of the estate.

19.      Shortly, after Joyce Doonan's death, in February 2021, Mr. Ferguson changed his Last Will and Testament.

20.      Originally, Mr. Ferguson's Will appointed Joyce as his Executrix and bequeathed all his assets to her. He only changed the will after her passing.

21.      The current Last and Testament dated February 24, 2021, directed that all assets be sold, with the proceeds to be divided as follows: Sandy Doonan 30%, Susan Doonan Bielski 30%, Kira Ferguson 20% and Shannon Ferguson 20%.

22.      Additionally, the Will appointed Sandy Doonan to serve as the Executrix of the Estate, however, Sandy Doonan relinquished her right so serve as Executrix.

23.      Mr. Ferguson's last wishes specified that if Sandy was unable or unwilling to serve, Kira Ferguson was to then be appointed in her place.

24.      In the months following his wife's death, Mr. Ferguson fought with depression. Mr. Ferguson struggled to cope with the death of his wife, having been diagnosed by his doctor with depression and suicidal ideations.

25.      Medical records reflect that he should reach out to a crisis center for help and that various medications were suggested to him and/or prescribed.

26.      In addition to grieving the loss of his wife, Mr. Ferguson was also battling health concerns that included kidney issues and partial blockage of his carotid artery.

27.     In September 2021, Mr. Ferguson suffered a stroke. Although it was not debilitating, Mr. Ferguson still experienced residual effects. Most significantly, he became physically weaker, increasing his risk of falls.

28.     His September, 2021, hospitalization saw his doctor additionally discuss the blockages to his carotid arteries. Physicians at Roanoke Memorial Hospital opined that they did not believe that Mr. Ferguson was a good surgical candidate due to his renal issues and, thus, were reluctant to address and/or treat the blockages.

29.     Shortly after his discharge from Roanoke Memorial, Mr. Ferguson's daughter, Kira Ferguson, decided to reach out to the hospital at the University of Pennsylvania in Philadelphia.

30.     After speaking with a doctor at the Hospital, both Kira and Mr. Ferguson were inspired with newfound confidence that a surgeon there would be able to perform the necessary operation to unblock his arteries, leading to Mr. Ferguson making plans to go to Philadelphia with his daughter, Kira.

31.     Mr. Ferguson's now optimistic outlook post-surgery rekindled his historic interest in modifying race cars and racing them himself.

32.     In fact, Mr. Ferguson asked his long-time racing partner to finish building a car that he now planned to race.

33.     Delivery of said car occurred September 26, 2021, and led to Mr. Ferguson personally test driving it.

34.     Despite this new hopefulness, Mr. Ferguson still struggled to cope with the death of his wife, as well as his own health issues, with friends noting that he still seemed sad.

35.     This did not deter him though as he continued to make plans to go to the hospital of the University of Pennsylvania.

36. On October 11, 2021, Defendant, Susan Doonan Bielski, came to Virginia unexpectedly.

37. At that time, another family member named Perry was scheduled to take Mr. Ferguson to Pennsylvania for his medical appointments.

38. Defendant asserted that she was going to take Mr. Ferguson to Pennsylvania, causing Perry to cancel his plans to do so.

39. The expectation was that on October 14, 2021, Mr. Ferguson would travel to Pennsylvania and, once there, he would be admitted for evaluation and treatment of his blockages.

40. This trip did not occur.

41. In the three (3) days that Defendant was alone with Mr. Ferguson prior to the trip, she initiated and sustained a systematic push to encourage his suicide.

42. Home surveillance and other evidence has led Plaintiffs to believe that Defendant spent the three days telling Mr. Ferguson that he had nothing to live for.

43. Further, that same surveillance footage has led Plaintiffs to believe that Defendant also reinforced and encouraged Mr. Ferguson to dwell on his wife's death.

44. On the morning of October 14, 2021, Defendant took her mother's ashes and began spreading them under a tree on the property that her mother and Mr. Ferguson used to sit under together.

45. Plaintiff's believe that this act on Defendant's part drove Mr. Ferguson to a new low emotionally.

46. Shortly after Defendant scattered Mr. Ferguson's wife's ashes, he took his life.

47. The in-home camera system also shows Defendant's active encouragement in Mr. Ferguson's preparation of his suicide note, going so far as to helping him spell out the word

"***arrangements***" in said note.

48.    Evidence and belief suggest that Defendant additionally directed where he should shoot himself ("not in the head… or… in the house"), given that the chairs in the yard were arranged nearly in the exact spot where Defendant had spread the ashes, being also the location where Mr. Ferguson then shot himself.

49.    Upon finishing his suicide note, Mr. Ferguson prepared the checks for his funeral arrangements, and then retrieved his .380 Ruger and began loading the weapon.

50.    Once loaded, Mr. Ferguson's walked outside to the area of the ashes and chairs. Video shows Defendant walking outside to the same area several seconds later.

51.    Mr. Ferguson's dog remained kept in his office, facing the yard where he eventually shot himself.

52.    Defendant took up the seat next to Mr. Ferguson a few feet away.

53.    Mr. Fergson aimed the gun at his chest and pulled the trigger while Defendant sat and watched.

54.    After Mr. Ferguson shot himself, he did not die instantly but, instead, suffered profoundly.

55.    Defendant took no immediate steps to render any aid or call 911 for help.

56.    Instead, she went to seek out a neighbor down the road, at which time she did finally call 911 at the neighbor's behest and direction.

57.    The neighbor came over to Mr. Ferguson's house and immediately told her to call the police as he began to try to help Mr. Fergson.

58.    He instructed her to get him a towel so that he could apply pressure to the wound.

59.    According to the neighbor, Defendant did not move with the haste that the

circumstances warranted.

60. Defendant did give a self-serving statement to the police upon their arrival on scene.

61. Defendant, upon Plaintiffs' information and belief, waited only two hours before she contacted the attorney who wrote Mr. Ferguson's will requesting a "reading of the will" in order to find out what her share of the Estate would be.

62. Defendant continued to press the attorney numerous times inquiring about the Estate.

63. It is believed that on the day of Mr. Ferguson's death Susan called the attorney even before she called her sisters.

64. Defendant clearly acted at all times with callous disregard for the feelings and concerns of others or the well-being of Mr. Ferguson.

65. Defendant's primary concern was with her own enrichment from this tragic event.

66. Sadly, Mr. Ferguson's may have dog witnessed the entire event, with footage showing the dog wailing as Mr. Ferguson shot himself.

67. To add insult to injury, Defendant took the dog home with her.

## PROCEDURAL POSTURE

68. Mr. William Ferguson died on October 14, 2021.

69. Shortly thereafter, Sandy Doonan renounced her status as Executrix.

70. Being next in line pursuant to Mr. Ferguson's Will, Plaintiff, Kira Ferguson, accepted her role as Executrix.

71. In October 2021, probate of the Estate began in Wythe County, Virginia.

72. Assets are still in the process of being appraised and prepared for sale.

## COUNT I - INJUNCTIVE RELIEF

73. Plaintiffs incorporate by reference paragraphs 1 through 72 as if fully set forth herein.

74. Defendant took an active role in facilitating Mr. Ferguson's suicide.

75. In-home footage of the suicide corroborates this fact.

76. Virginia Code § 8.01-622.1(a) states that:

*"Any person who knowingly and intentionally, with the purpose of assisting another person to commit or attempt to commit suicide, (i) provides the physical means by which another person commits or attempts to commit suicide or (ii) participates in a physical act by which another person commits or attempts to commit suicide shall be liable for damages as provided in this section and may be enjoined from such acts."*

77. Defendant knowingly and intentionally assisted Mr. Ferguson to commit suicide.

78. Additionally, the same statute states that:

*(c) A spouse, parent, child or sibling of a person who commits or attempts to commit suicide may recover compensatory and punitive damages in a civil action from any person who provided the physical means for the suicide or attempted suicide or who participated in a physical act by which the other person committed or attempted to commit suicide.*

*See* VA Code Ann. § 8.01-622.1(c).

79. Plaintiffs, as the children Mr. Ferguson, are deprived of their father due to the callous actions and conduct of Defendant, Susan Doonan Bielski, who preyed on his depression and health concerns for her own personal financial benefit.

80. Defendant had direct and personal knowledge of Mr. Ferguson's mental state and took no steps to contact authorities in order to avoid his suicide.

81. Defendant's conduct was tantamount to "grooming" Mr. Ferguson to believe that suicide was the only path to ending his depression and mental anguish.

82. Defendant, an attorney by trade, has a heightened awareness of the importance of mental health issues as they affect human behavior and is expected to assist persons who may harm

themselves or others.

83.     Defendant did not contact any person, professional, or organization to assist her step-father in his suicidal depression.

84.     Defendant oversaw all aspects of Mr. Ferguson's suicide, have aided him in the writing of his suicide note, selecting the location where he would eventually kill himself (spreading her mother's ashes there), arranging two plastic lawn chairs next to one another, to only sit down in one to wait for Mr. Ferguson to pull the trigger, and to then render no substantive aid as he sat dying.

85.     Defendant's stood to personally profit from this conduct as an heir to the Estate, a fact that she knew at the time she was orchestrating this tragedy.

86.     Mr. Ferguson is survived by certain beneficiaries who have sustained financial and pecuniary loss as a result of the death of their father, suffering mental anguish, emotional loss and companionship as children of Mr. Ferguson.

### COUNT II – WRONGFUL DEATH

87.     Plaintiffs incorporate by reference paragraphs 1 through 86 as if fully set forth herein.

88.     Defendant's conduct was willful and wanton and demonstrated a complete and total disregard for the wellbeing of Mr. Furguson.

89.     Defendant owed Mr. Ferguson a duty of reasonable care given her awareness of his ongoing anguish and suicidal ideations.

90.     Defendant's encouraging Mr. Ferguson to commit suicide was wholly consistent with a breach of this duty.

91.     But for Defendant's conduct, Mr. Ferguson would have likely continued to live.

92.     Had Mr. Furguson survived, he would have had his own claim again Defendant in this matter due to the above consideration.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.     Enter judgment against Defendant for compensatory damages in the amount of not less than $2,000,000.00, or such other amount as shall be proven at trial, with prejudgment interest as applicable.

B.     Enter judgment against Defendant for punitive damages in the amount of $4,000,000.00.

C.     Enjoin Defendant from receiving any portion of the Estate of William S. Ferguson.

D.     Impose a constructive trust over any real or personal property Defendant in entitled to pursuant to the terms of the Will of William S. Ferguson, Deceased.

E.     Name the remaining heirs, pursuant to the Will of William S. Ferguson, as the sole beneficiaries of the trust.

F.     Divide Defendant's share of the Estate, once in trust, evenly between the remaining heirs/beneficiaries pursuant to the Will/constructive trust.

G.     For an award of attorney's fees and costs from Defendant as a result of her violation of Virginia law and the need for Plaintiffs to prosecute this matter.

H.     For any other relief appropriate under the circumstances.

I.     For a jury trial on this matter.

**KIRA FERGUSON, individually and
as Executrix of the
ESTATE OF WILLIAM S. FERGUSON,
DECEASED, and SHANNON FERGUSON,
in her own right.**
*by Counsel*

COUNSEL:

Flux J. Neo, Esq.
Virginia State Bar No. 78873
Flux J. Neo Law Firm, PLLC
P.O. Box 188
Tazewell, VA 24651
Phone: (276) 988-7996
Fax: (276) 644-2622
Email: Office@NeoLaw1.com


PRO HAC VICE COUNSEL PENDING:

Gerard K. Schrom /s/

Gerard K. Schrom, Esq.
Pennsylvania State Bar No. 39282
Schrom and Schaffer, P.C.
4 West Front Street
Media, PA 19063
Phone: (610) 565-5050
Fax: (610) 565-2980
Email: gschrom@schromandshaffer.com



**OFFICIAL RECEIPT**
**WYTHE CIRCUIT COURT**
**CIVIL**

**DATE :** 08/18/2023     **TIME :** 09:11:01     **CASE # :** 197CL2300109400

**RECEIPT # :** 23000006665     **TRANSACTION # :** 23081800003

**CASHIER :** ADC     **REGISTER # :** C986     **FILING TYPE :** INJ     **PAYMENT :** FULL PAYMENT

**CASE COMMENTS :** FERGUSON, KIRA v. BIELSKI, SUSAN DOONAN

**SUIT AMOUNT :** $2,000,000.00

**ACCOUNT OF :** FERGUSON, KIRA

**PAID BY :** FERGUSON, KIRA

**CREDIT/DEBIT CARD :** $85.68

**DESCRIPTION 1 :** INJ:INJUNCTION

**2 :** PLAINTIFF: FERGUSON, KIRA

**3 :** NO HEARING SCHEDULED

| ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|
| 049 | WRIT TAX (CIVIL) | $5.00 |
| 106 | TECHNOLOGY TRST FND | $5.00 |
| 123 | LEGAL AID SERVICES | $9.00 |
| 147 | INDIGENT ASSISTANCE (INA) | $1.00 |
| 170 | COURT TECHNOLOGY FUND | $10.00 |

| ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|
| 219 | LAW LIBRARY | $4.00 |
| 304 | CIVIL FILING FEE (LAW & EQUITY) | $50.00 |
| 407 | CONVENIENCE FEE | $1.68 |

**TENDERED : $** 85.68

**AMOUNT PAID : $** 85.68

no Service requested

COURT COPY     **CLERK OF COURT :** JEREMIAH E. MUSSER     RECEIPT COPY 2 OF 2

**STEWART R. POLLOCK**
DIRECT: 804 864-4832
FAX: 804 421-6251
spollock@moranreevesconn.com

September 19, 2023

**VIA U.S. MAIL AND EMAIL**
Wyth County Circuit Court
Circuit Court Building
225 S. Fourth Street
Room 105
Wytheville, VA 24382

Re: **Kira Ferguson, individually and as Executrix of the Estate of William S. Ferguson, Deceased, and Shannon Ferguson, in her own right, v. Susan Doonan Bielski**
**Norfolk Circuit Court – Case Number: CL23-1094**

Dear Mr. Musser:

Enclosed please find the Defendant, Susan Doonan Bielski's *Notice of Filing Notice of Removal* in the above referenced matter.

Should you have any questions, please do not hesitate to contact me.

Sincerely yours,

*SRPollock*

Stewart R. Pollock, Esq.

SRP/bjm
Enclosure

cc: Kathleen M. McCauley, Esquire *(via email w/ enclosure)*
Flux J. New, Esquire (via email w/ enclosure
Gerard K. Schrom, Esquire (via email w/ enclosure

**VIRGINIA: IN THE CIRCUIT COURT OF WYTHE COUNTY**

KIRA FERGUSON, individually
and as Executrix of the ESTATE OF WILLIAM
S. FERGUSON, DECEASED, and SHANNON
FERGUSON, in her own right,

Plaintiffs,

v.                                                                    Case No. CL23001094-00

SUSAN DOONAN BIELSKI,

Defendant.

**NOTICE OF FILING NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that on September 19, 2023, Defendant Susan Doonan Bielski,

by counsel, filed a Notice of Removal of this case from the Circuit Court of the County of

Wythe, Virginia, to the United States District Court for the Western District of Virginia,

Abingdon Division. A copy of the Notice of Removal is attached hereto as **Exhibit A** and

incorporated herein. Pursuant to 28 U.S.C. § 1446, Defendant hereby requests that this Court

proceed no further unless and until this case is remanded.

SUSAN DOONAN BIELSKI

By: *SR Pollock*

Kathleen McCauley, Esquire (VSB # 39028)
Stewart R. Pollock, Esquire (VSB # 92466)
MORAN REEVES & CONN PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
lmcmurdo@moranreevesconn.com
spollock@moranreevesconn.com
*Counsel for Susan Doonan Bielski*

FILED IN THE OFFICE OF THE CLERK
OF THE CIRCUIT COURT OF WYTHE
COUNTY, VIRGINIA.
THIS 26th DAY OF September 2023
AT 4:01 A.M.
BY Teresa Lovelace, DEP. CLERK

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of September, 2023 a true and accurate copy of the foregoing *Notice of Filing Notice of Removal* was filed electronically on the Western District of Virginia Document Filing System (CM/ECF), served by electronic mail (PDF attachment) and by U.S. mail, postage prepaid, to counsel for plaintiff and served upon all other counsel of record via electronic mail (PDF attachment) as follows:

> Flux J. Neo, Esquire (VSB # 78873)
> Flux J. New Law Firm, PLLC
> P.O. Box 188
> Tazewell, Virginia 24651
> Telephone: (276) 988-7996
> Facsimile: (276) 644-2622
> Office@NewLaw1.com
> *Counsel for Plaintiff*
>
> Gerard K. Schrom, Esquire (VSB # 39282)
> Schrom and Schaffer, P.C.
> 4 West Front Street
> Media, Pennsylvania
> Telephone: (610) 565-5050
> Facsimile: (610) 565-2980
> gschrom@schromandshaffer.com
> *Pro Hac Vice Counsel*

**SUSAN DOONAN BIELSKI**

By: _SR Pollock_

Kathleen McCauley, Esquire (VSB # 39028)
Stewart R. Pollock, Esquire (VSB # 92466)
MORAN REEVES & CONN PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 864-4832
Facsimile: (804) 421-6251
kmccauley@moranreevesconn.com
spollock@moranreevesconn.com
*Counsel for Susan Doonan Bielski*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Abingdon Division

KIRA FERGUSON, individually
and as Executrix of the ESTATE OF WILLIAM
S. FERGUSON, DECEASED, and SHANNON
FERGUSON, in her own right,

        Plaintiffs,

v.

SUSAN DOONAN BIELSKI,

        Defendant,

Civil Action No. _CL23-1094_

## DEFENDANT SUSAN DOONAN BIELSKI'S
## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant Susan Doonan Bielski ("Bielski"), by counsel

and pursuant to 28 U.S.C. § 1446, hereby removes the above-captioned action from the Circuit

Court for the County of Wythe, Virginia to the United States District Court for the Western District

of Virginia. Bielski provides the following short and plain statement of the grounds for removal:

### BACKGROUND

1. On August 18, 2023, Plaintiffs Kira Ferguson and Shannon Ferguson ("Plaintiffs") filed a

complaint captioned *Kira Ferguson, individually and as Executrix of the Estate of William S.*

*Ferguson, Deceased, and Shannon Ferguson, in her own right, v. Susan Doonan Bielski* in the

Circuit Court for the County of Wythe, Virginia, Case No. CL23001094-00 ("the Virginia Case"),

against Susan Doonan Bielski ("Bielski"), a true copy of which is attached as **Exhibit A** ("the

Complaint").

FILED IN THE OFFICE OF THE CLERK
OF THE CIRCUIT COURT OF WYTHE
COUNTY, VIRGINIA.
THIS 26th DAY OF September, 2023
AT 9:02 A.M.
BY Teresa Arnlace, DEP. CLERK



DEFENDANT'S
EXHIBIT
A

2. On August 21, 2023, Kira Ferguson filed a "Motion of Extension of Time to Submit Estate Accounting To The Commissioner and For Hearing On Motion to Dismiss" in a parallel action between the parties captioned *Susan Doonan Bielski & Sanda B. Doonan v. Kira Ferguson, Executrix for the Estate of William Sandrel Ferguson* in the Circuit Court for the County of Wythe, Virginia, Case No. CWF21-240-00, a true copy of that motion is attached as **Exhibit B.**

3. That motion attached the Complaint as an exhibit.

4. Bielski received that motion – and therefore the Complaint – on August 21, 2023.

5. Bielski is a citizen of New Hampshire. Compl. ¶ 4.

6. Plaintiff Kira Ferguson is a citizen of Virginia. Compl. ¶ 7.

7. Plaintiff Shannon Ferguson is a citizen of Pennsylvania. Compl. ¶ 2.

## I.     JURISDICTION

8. Removal of this action is proper under 28 U.S.C. §§1332, 1446 because there is complete diversity of the parties, the amount in controversy exceeds $75,000, and removal is timely.

9. There is complete diversity of the parties because Defendant is a citizen of New Hampshire and Plaintiffs are citizens of Virginia and Pennsylvania. 28 U.S.C. § 1446(c); 28 U.S. Code § 1332(a)(1). No Plaintiff is a citizen of New Hampshire and therefore there is complete diversity.

10. The amount in controversy exceeds $75,000 because Plaintiff's *ad damnum* is $1,500,000. 28 U.S.C. § 1446(c)(2).

11. Removal is timely. Pursuant to 28 U.S.C. § 1446, the notice of removal must be filed within 30 days of receipt of the Complaint "through service or otherwise." 28 U.S.C. § 1446(b)(1).

12. Here, Bielski received the Complaint on August 21, 2023. Because she was in "receipt" of the Complaint, which had been attached as an exhibit to a pleading served in another matter,

Bielski had 30 days from August 21, 2023 – or September 20, 2023 – to remove the action. 28 U.S.C. § 1446(b)(1).[1]

13. Her removal is therefore timely and this case is removable pursuant to 28 U.S.C. § 1446.

14. Consistent with the short and plain statement of the law and facts set forth above, this federal district court has jurisdiction because there is complete diversity of the parties and the amount in controversy exceeds the jurisdictional minimum. Thus, subject matter jurisdiction is established.

15. This specific federal district court has personal jurisdiction over Plaintiffs because they have availed themselves of this jurisdiction by bringing suit in the Circuit Court for the County of Wythe. Thus, upon removal, the Western District of Virginia, Abingdon Division, is the appropriate venue for this matter to be heard.

## II.    **PROCEDURAL COMPLIANCE**

16. Written notice of the filing of this Notice of Removal is being given promptly to Plaintiff by service hereof, and a copy of the Notice of Removal is being filed promptly with the Virginia Circuit Court for the County of Wythe, as required by 28 U.S.C. § 1446(d).  A copy of the notice provided to the state court is attached as **Exhibit C** (without exhibits).

17. As required by 28 U.S.C. § 1446(a), a true and correct copy of the only process and pleading filed in the Virginia Case – the Complaint – is being filed with this Notice of Removal as **Exhibit A.**

---

[1] Because Bielski received the motion by facsimile, Bielski's time for responding was increased by 3 days. See Fed. R. Civ. P. 6(d) ("3 days are added after the period would otherwise expire").

18. A court cannot remand a properly removed case for discretionary or policy reasons, such as allegedly related state court cases or a contention that judicial economy compels remand. 28 U.S.C. § 1447(c); *Thermitron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336 (1976).

19. Should Plaintiffs move to remand this case, Bielski respectfully requests an opportunity to respond more fully in writing, including submission of additional affidavits and authority.

20. Bielski reserves all of her defenses.

**SUSAN DOONAN BIELSKI**

By: *SR Pollock*

Kathleen McCauley, Esquire (VSB # 39028)
Stewart R. Pollock, Esquire (VSB # 92466)
MORAN REEVES & CONN PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
kmccauley@moranreevesconn.com
spollock@moranreevesconn.com
*Counsel for Susan Doonan Bielski*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September, 2023 a true and accurate copy of the foregoing *Notice of Filing Notice of Removal* was filed electronically on the Western District of Virginia Document Filing System (CM/ECF), served by electronic mail (PDF attachment) and by U.S. mail, postage prepaid, to counsel for plaintiff and served upon all other counsel of record via electronic mail (PDF attachment) as follows:

Flux J. Neo, Esquire (VSB # 78873)
Flux J. New Law Firm, PLLC
P.O. Box 188
Tazewell, Virginia 24651
Telephone: (276) 988-7996
Facsimile: (276) 644-2622
Office@NewLaw1.com
*Counsel for Plaintiff*

Gerard K. Schrom, Esquire (VSB # 39282)
Schrom and Schaffer, P.C.
4 West Front Street
Media, Pennsylvania
Telephone: (610) 565-5050
Facsimile: (610) 565-2980
gschrom@schromandshaffer.com
*Pro Hac Vice Counsel*

**SUSAN DOONAN BIELSKI**

By: *SR Pollock*

Kathleen McCauley, Esquire (VSB # 39028)
Stewart R. Pollock, Esquire (VSB # 92466)
MORAN REEVES & CONN PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 864-4832
Facsimile: (804) 421-6251
kmccauley@moranreevesconn.com
spollock@moranreevesconn.com
*Counsel for Susan Doonan Bielski*

VALIDATE CASE PAPERS
RCPT : 23000006665
DATE : 06/16/2023 TIME: 09:11
CASE : 197CL23001094-00
ACCT : FERGUSON, KIRA
AMT. : $85.68

**VIRGINIA: IN THE CIRCUIT COURT OF WYTHE COUNTY**

**KIRA FERGUSON, individually and** )
**as Executrix of the** )
**ESTATE OF WILLIAM S. FERGUSON,** )
**DECEASED, and SHANNON FERGUSON,** )
**in her own right,** )
*Petitioners,* )
)                    **Case No.:**
)
**v.** )
)
**SUSAN DOONAN BIELSKI,** )
*Defendant.* )
)

## COMPLAINT

COMES NOW Plaintiffs, Kira Ferguson, individually and as the Executrix of the Estate

of William S. Ferguson, Deceased, and Shannon Ferguson, in her own right, by and

through counsel, hereby files this Complaint and in support thereof states as follows:

## THE PARTIES

1.     Plaintiff, Kira Ferguson, is the biological daughter and Executrix of her late father's

estate, William S. Ferguson, Deceased.

2.     Plaintiff, Shannon Ferguson, resides in the Commonwealth of Pennsylvania.

3.     Plaintiff, Shannon Ferguson, is likewise the biological daughter of the Decedent,

William S. Ferguson.

4.     Defendant, Susan Doonan Bielski, resides in the state of New Hampshire.

5.     Defendant, Susan Doonan Bielski, is the stepdaughter of the decedent, William S.

Ferguson, by and through his marriage to Joyce Doonan, who preceded him in death.

## JURISDICTION AND VENUE

6.     This matter stems from the untimely death of Mr. William Ferguson, who took his



own life, on October 14, 2021, with the assistance, provocation, and participation of Defendant, Susan Doonan Bielski, in Wythe County Virginia.

7. Plaintiff, Kira Ferguson, resides in Wythe County, Virginia.

8. Plaintiff, Kira Ferguson, as of the filing of this Complaint, serves as the Executrix for William S. Ferguson's Estate, in Wythe County, Virginia.

9. Various real properties are located in Wythe County, Virginia, and are a part of the Estate at issue in this matter.

## FACTUAL BACKGROUND

10. William S. Ferguson and Joyce Doonan were married for approximately thirty (30) years.

11. At the time of their union, both William and Joyce had children from previous marriages.

12. Joyce Doonan (deceased) had two biological daughters, Sandy Doonan and Susan Doonan Bielski.

13. Defendant, Susan Doonan Bielski, lived in and was educated in New England at various boarding schools, during college and through law school.

14. William Ferguson's biological daughters are Kira Ferguson and Shannon Ferguson, Plaintiffs in this matter.

15. Decedent, William S. Ferguson, was able to acquire various properties, which included a mobile home park, garages, storage units, horse farm, as well as a residence that sits on thirty-two (32) acres of land. All such assets are believed to be in Wythe County, Virginia.

16. Joyce Doonan, mother to Defendant, graduated from medical school, and ultimately, became an anesthesiologist working in and around Wytheville, Virginia, for over twenty

-2-

(20) years.

17.     Together, the Decedents, Joyce and William, were able to build a comfortable life for themselves and amassed an Estate worth approximately $2,000,000.00.

18.     Unfortunately, in January 2021, Joyce Doonan passed unexpectedly, thereby, leaving Mr. William Ferguson her entire stare of the estate.

19.     Shortly, after Joyce Doonan's death, in February 2021, Mr. Ferguson changed his Last Will and Testament.

20.     Originally, Mr. Ferguson's Will appointed Joyce as his Executrix and bequeathed all his assets to her. He only changed the will after her passing.

21.     The current Last and Testament dated February 24, 2021, directed that all assets be sold, with the proceeds to be divided as follows: Sandy Doonan 30%, Susan Doonan Bielski 30%, Kira Ferguson 20% and Shannon Ferguson 20%.

22.     Additionally, the Will appointed Sandy Doonan to serve as the Executrix of the Estate, however, Sandy Doonan relinquished her right so serve as Executrix.

23.     Mr. Ferguson's last wishes specified that if Sandy was unable or unwilling to serve, Kira Ferguson was to then be appointed in her place.

24.     In the months following his wife's death, Mr. Ferguson fought with depression. Mr. Ferguson struggled to cope with the death of his wife, having been diagnosed by his doctor with depression and suicidal ideations.

25.     Medical records reflect that he should reach out to a crisis center for help and that various medications were suggested to him and/or prescribed.

26.     In addition to grieving the loss of his wife, Mr. Ferguson was also battling health concerns that included kidney issues and partial blockage of his carotid artery.

-3-

27. In September 2021, Mr. Ferguson suffered a stroke. Although it was not debilitating, Mr. Ferguson still experienced residual effects. Most significantly, he became physically weaker, increasing his risk of falls.

28. His September, 2021, hospitalization saw his doctor additionally discuss the blockages to his carotid arteries. Physicians at Roanoke Memorial Hospital opined that they did not believe that Mr. Ferguson was a good surgical candidate due to his renal issues and, thus, were reluctant to address and/or treat the blockages.

29. Shortly after his discharge from Roanoke Memorial, Mr. Ferguson's daughter, Kira Ferguson, decided to reach out to the hospital at the University of Pennsylvania in Philadelphia.

30. After speaking with a doctor at the Hospital, both Kira and Mr. Ferguson were inspired with newfound confidence that a surgeon there would be able to perform the necessary operation to unblock his arteries, leading to Mr. Ferguson making plans to go to Philadelphia with his daughter, Kira.

31. Mr. Ferguson's now optimistic outlook post-surgery rekindled his historic interest in modifying race cars and racing them himself.

32. In fact, Mr. Ferguson asked his long-time racing partner to finish building a car that he now planned to race.

33. Delivery of said car occurred September 26, 2021, and led to Mr. Ferguson personally test driving it.

34. Despite this new hopefulness, Mr. Ferguson still struggled to cope with the death of his wife, as well as his own health issues, with friends noting that he still seemed sad.

35. This did not deter him though as he continued to make plans to go to the hospital of the University of Pennsylvania.

-4-

36.     On October 11, 2021, Defendant, Susan Doonan Bielski, came to Virginia unexpectedly.

37.     At that time, another family member named Perry was scheduled to take Mr. Ferguson to Pennsylvania for his medical appointments.

38.     Defendant asserted that she was going to take Mr. Ferguson to Pennsylvania, causing Perry to cancel his plans to do so.

39.     The expectation was that on October 14, 2021, Mr. Ferguson would travel to Pennsylvania and, once there, he would be admitted for evaluation and treatment of his blockages.

40.     This trip did not occur.

41.     In the three (3) days that Defendant was alone with Mr. Ferguson prior to the trip, she initiated and sustained a systematic push to encourage his suicide.

42.     Home surveillance and other evidence has led Plaintiffs to believe that Defendant spent the three days telling Mr. Ferguson that he had nothing to live for.

43.     Further, that same surveillance footage has led Plaintiffs to believe that Defendant also reinforced and encouraged Mr. Ferguson to dwell on his wife's death.

44.     On the morning of October 14, 2021, Defendant took her mother's ashes and began spreading them under a tree on the property that her mother and Mr. Ferguson used to sit under together.

45.     Plaintiff's believe that this act on Defendant's part drove Mr. Ferguson to a new low emotionally.

46.     Shortly after Defendant scattered Mr. Ferguson's wife's ashes, he took his life.

47.     The in-home camera system also shows Defendant's active encouragement in Mr. Ferguson's preparation of his suicide note, going so far as to helping him spell out the word

-5-

"***arrangements***" in said note.

48.     Evidence and belief suggest that Defendant additionally directed where he should shoot himself ("not in the head... or... in the house"), given that the chairs in the yard were arranged nearly in the exact spot where Defendant had spread the ashes, being also the location where Mr. Ferguson then shot himself.

49.     Upon finishing his suicide note, Mr. Ferguson prepared the checks for his funeral arrangements, and then retrieved his .380 Ruger and began loading the weapon.

50.     Once loaded, Mr. Ferguson's walked outside to the area of the ashes and chairs. Video shows Defendant walking outside to the same area several seconds later.

51.     Mr. Ferguson's dog remained kept in his office, facing the yard where he eventually shot himself.

52.     Defendant took up the seat next to Mr. Ferguson a few feet away.

53.     Mr. Fergson aimed the gun at his chest and pulled the trigger while Defendant sat and watched.

54.     After Mr. Ferguson shot himself, he did not die instantly but, instead, suffered profoundly.

55.     Defendant took no immediate steps to render any aid or call 911 for help.

56.     Instead, she went to seek out a neighbor down the road, at which time she did finally call 911 at the neighbor's behest and direction.

57.     The neighbor came over to Mr. Ferguson's house and immediately told her to call the police as he began to try to help Mr. Fergson.

58.     He instructed her to get him a towel so that he could apply pressure to the wound.

59.     According to the neighbor, Defendant did not move with the haste that the

circumstances warranted.

60.  Defendant did give a self-serving statement to the police upon their arrival on scene.

61.  Defendant, upon Plaintiffs' information and belief, waited only two hours before she contacted the attorney who wrote Mr. Ferguson's will requesting a "reading of the will" in order to find out what her share of the Estate would be.

62.  Defendant continued to press the attorney numerous times inquiring about the Estate.

63.  It is believed that on the day of Mr. Ferguson's death Susan called the attorney even before she called her sisters.

64.  Defendant clearly acted at all times with callous disregard for the feelings and concerns of others or the well-being of Mr. Ferguson.

65.  Defendant's primary concern was with her own enrichment from this tragic event.

66.  Sadly, Mr. Ferguson's may have dog witnessed the entire event, with footage showing the dog wailing as Mr. Ferguson shot himself.

67.  To add insult to injury, Defendant took the dog home with her.

## PROCEDURAL POSTURE

68.  Mr. William Ferguson died on October 14, 2021.

69.  Shortly thereafter, Sandy Doonan renounced her status as Executrix.

70.  Being next in line pursuant to Mr. Ferguson's Will, Plaintiff, Kira Ferguson, accepted her role as Executrix.

71.  In October 2021, probate of the Estate began in Wythe County, Virginia.

72.  Assets are still in the process of being appraised and prepared for sale.

## COUNT I - INJUNCTIVE RELIEF

73. Plaintiffs incorporate by reference paragraphs 1 through 72 as if fully set forth herein.

74. Defendant took an active role in facilitating Mr. Ferguson's suicide.

75. In-home footage of the suicide corroborates this fact.

76. Virginia Code § 8.01-622.1(a) states that:

*"Any person who knowingly and intentionally, with the purpose of assisting another person to commit or attempt to commit suicide, (i) provides the physical means by which another person commits or attempts to commit suicide or (ii) participates in a physical act by which another person commits or attempts to commit suicide shall be liable for damages as provided in this section and may be enjoined from such acts."*

77. Defendant knowingly and intentionally assisted Mr. Ferguson to commit suicide.

78. Additionally, the same statute states that:

*(c) A spouse, parent, child or sibling of a person who commits or attempts to commit suicide may recover compensatory and punitive damages in a civil action from any person who provided the physical means for the suicide or attempted suicide or who participated in a physical act by which the other person committed or attempted to commit suicide.*

*See* VA Code Ann. § 8.01-622.1(c).

79. Plaintiffs, as the children Mr. Ferguson, are deprived of their father due to the callous actions and conduct of Defendant, Susan Doonan Bielski, who preyed on his depression and health concerns for her own personal financial benefit.

80. Defendant had direct and personal knowledge of Mr. Ferguson's mental state and took no steps to contact authorities in order to avoid his suicide.

81. Defendant's conduct was tantamount to "grooming" Mr. Ferguson to believe that suicide was the only path to ending his depression and mental anguish.

82. Defendant, an attorney by trade, has a heightened awareness of the importance of mental health issues as they affect human behavior and is expected to assist persons who may harm

themselves or others.

83. Defendant did not contact any person, professional, or organization to assist her step-father in his suicidal depression.

84. Defendant oversaw all aspects of Mr. Ferguson's suicide, have aided him in the writing of his suicide note, selecting the location where he would eventually kill himself (spreading her mother's ashes there), arranging two plastic lawn chairs next to one another, to only sit down in one to wait for Mr. Ferguson to pull the trigger, and to then render no substantive aid as he sat dying.

85. Defendant's stood to personally profit from this conduct as an heir to the Estate, a fact that she knew at the time she was orchestrating this tragedy.

86. Mr. Ferguson is survived by certain beneficiaries who have sustained financial and pecuniary loss as a result of the death of their father, suffering mental anguish, emotional loss and companionship as children of Mr. Ferguson.

## COUNT II – WRONGFUL DEATH

87. Plaintiffs incorporate by reference paragraphs 1 through 86 as if fully set forth herein.

88. Defendant's conduct was willful and wanton and demonstrated a complete and total disregard for the wellbeing of Mr. Furguson.

89. Defendant owed Mr. Ferguson a duty of reasonable care given her awareness of his ongoing anguish and suicidal ideations.

90. Defendant's encouraging Mr. Ferguson to commit suicide was wholly consistent with a breach of this duty.

91. But for Defendant's conduct, Mr. Ferguson would have likely continued to live.

92. Had Mr. Furguson survived, he would have had his own claim again Defendant in this matter due to the above consideration.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A. Enter judgment against Defendant for compensatory damages in the amount of not less than $2,000,000.00, or such other amount as shall be proven at trial, with prejudgment interest as applicable.

B. Enter judgment against Defendant for punitive damages in the amount of $4,000,000.00.

C. Enjoin Defendant from receiving any portion of the Estate of William S. Ferguson.

D. Impose a constructive trust over any real or personal property Defendant in entitled to pursuant to the terms of the Will of William S. Ferguson, Deceased.

E. Name the remaining heirs, pursuant to the Will of William S. Ferguson, as the sole beneficiaries of the trust.

F. Divide Defendant's share of the Estate, once in trust, evenly between the remaining heirs/beneficiaries pursuant to the Will/constructive trust.

G. For an award of attorney's fees and costs from Defendant as a result of her violation of Virginia law and the need for Plaintiffs to prosecute this matter.

H. For any other relief appropriate under the circumstances.

I. For a jury trial on this matter.

**KIRA FERGUSON, individually and
as Executrix of the
ESTATE OF WILLIAM S. FERGUSON,
DECEASED, and SHANNON FERGUSON,
in her own right.**
*by Counsel*

COUNSEL:

Flux J. Neo, Esq.
Virginia State Bar No. 78873
Flux J. Neo Law Firm, PLLC
P.O. Box 188
Tazewell, VA 24651
Phone: (276) 988-7996
Fax: (276) 644-2622
Email: Office@NeoLaw1.com


PRO HAC VICE COUNSEL PENDING:

Gerard K. Schrom /s/

Gerard K. Schrom, Esq.
Pennsylvania State Bar No. 39282
Schrom and Schaffer, P.C.
4 West Front Street
Media, PA 19063
Phone: (610) 565-5050
Fax: (610) 565-2980
Email: gschrom@schromandshaffer.com

# Fax

| To | From |
|---|---|
| Alejandro E. Gomez, Esq. | Flux Neo, Esq. |
| Fax: (276) 228-0687 | (877) 636-5291 |

| | |
|---|---|
| **Date:** | August 21, 2023 01:34 PM |
| **Pages:** | 19  (including cover) |
| **Re:** | Kira Ferguson |

Please see attached



DEFENDANT'S
EXHIBIT
B

## VIRGINIA: IN THE CIRCUIT COURT OF WYTHE COUNTY

SUSAN DOONAN BIELSKI        )
SANDRA B. DOONAN,              )
*Petitioners,*                      )
                            )
v.                             )    **CASE NO.:**    **CWF21-240-00**
                            )
KIRA FERGUSON              )
EXECUTRIX FOR THE ESTATE OF    )
WILLIAM SANDREL FERGUSON,     )
*Respondent.*                    )

### MOTION OF EXTENSION OF TIME TO
### SUBMIT ESTATE ACCOUNTING TO THE COMMISSIONER
### AND FOR HEARING ON MOTION TO DISMISS

COMES NOW, Respondent, Kira Ferguson, Executrix of the Estate of William Sandrel Ferguson, by and through counsel, and moves this Court for an Order granting an extension of time to submit the Estate Accounting to the Commissioner, and in support of said motion, states as follows:

On July 7, 2023, Petitioners filed a Motion seeking an Accounting and to have Respondent removed as Executrix alleging financial malfeasance. A hearing to show cause was conducted on August 8, 2023. At the time of hearing, Respondent requested a continuance of the matter to allow time for her to obtain counsel to defend her in this action and to also retain a CPA who could assist her with preparing the Estate accounting for submission to the Commissioner.

The Court gave Respondent ten (10) days, or by August 18, 2023, to submit two years of accounting day-by-day, item by item, in chronological order and to demonstrate all deposits and all withdrawals from the Estate account.

Respondent engaged the law firm of Flux J. Neo, Esq., who filed a Motion to Dismiss citing fatal procedural irregularities. *See* attached Exhibit A. Said motion has yet to be ruled upon by the Court.

Respondent also filed, through counsel Flux J. Neo, Esq., a Wrongful Death and Injunction Against Assisted Suicide Complaint on August 18, 2023, citing significant and **unconscionable actions** by Petitioner, Susan Doonan Bielski, Esq., against decedent, Mr. Will Ferguson, whose estate is the subject matter of the Petition. *See* Exhibit B. This Complaint is seeking to have the share of the Petitioner nullified and is also seeking compensatory and punitive damages that go significantly beyond the potential distribution of Petitioner's share of the subject Ferguson Estate.

Respondent secured a CPA firm to assist in the preparation of required documentation, however the firm indicated that they would need an additional 10 weeks to complete the task. *See* Exhibit C.

Regardless, Respondent was able to gather and organize bank statements, records, and receipts in chronological order as Ordered by the Court.

On August 18, 2023, Respondent went to Commissioner's office to submit the Estate Accounting. The Commissioner, Mr. Randy Jones, Esq., reviewed the documents and stated they were missing a cover sheet form and, as a consequence, refused to accept the submission. Respondent queried as to whether she could just complete the form and bring it back on August 21, 2023. The Commissioner said he could not accept the documents on August 21, 2023, due to the Order requiring submission to be made before the close of business on August 18, 2023.

Respondent has substantially complied with this Court's Order in that:

- She secured counsel.
- She, through counsel, challenged the Petitioner's filing.

- She, through counsel, filed a Complaint against Petitioner of the most serious allegations.

- She secured an accounting firm to assist in preparation of requested Estate Accounting.

- She prepared for review the documents responsive to Judge's Order.

- She brought documents to the Commissioner of Accounts on August 18, 2023.

- And considering that this is a petition on a Rule to Show Cause, Respondent, Kira Ferguson, would presumably be afforded an opportunity to purge any contempt finding made by the Court.

WHEREFORE, Respondent respectfully requests that she be allowed to file the documents prepared thus far with the Commissioner of Accounts, that any decision by the Court to have Respondent removed as Executrix of the Estate of William Sandrel Ferguson, be taken under advisement pending a hearing on the Motion to Dismiss and that the Court permit any other remedies that should prove necessary given the above considerations.

**KIRA FERGUSON**
**EXECUTRIX FOR THE ESTATE OF**
**WILLIAM SANDREL FERGUSON**
*By Counsel*

COUNSEL:

Flux J. Neo, Esq.
VSB #78873
Flux J. Neo Law Firm, PLLC
P.O. Box 188
Tazewell, VA 24651
PHONE: (276) 988-7996
FAX: (276) 988-6176
Email: Office@NeoLaw1.com

## CERTIFICATE

I hereby certify that a true and accurate copy of the foregoing was faxed to Alejandro Emilio Gomez, Esq., counsel for Petitioners at 276-228-0687 and Randy Jones, Esq., Commissioner of Accounts, at 276-223-0390, on August 21, 2023.

Alex J. Neo, Esq.

# EXHIBIT A

## VIRGINIA: IN THE CIRCUIT COURT OF WYTHE COUNTY

SUSAN DOONAN BIELSKI  &amp;<br>
SANDRA B. DOONAN,<br>
*Petitioners,*

    v.

KIRA FERGUSON<br>
EXECUTRIX FOR THE ESTATE OF<br>
WILLIAM SANDREL FERGUSON,<br>
*Respondent.*

)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)<br>
)

Case No.: CWF210000240

## MOTION TO DISMISS

COMES NOW, Respondent, **Kira Ferguson, Executrix for the Estate of** William Sandrel

Ferguson, by counsel, and moves this Court to dismiss the Show Cause Summons, dated July 7,

2023, and, in support of said motion, states as follows:

Pursuant to § 8.01-274.1, of the Code of Virginia, a "motion or petition [for a rule to show

cause] shall include facts identifying with particularity the violation of a specific court order..."

Petitioners have failed to identify any Order of this Court that Respondent has violated. Instead

a series of facts about an estate matter, currently under the direct supervision of the Wythe

County Commissioner of Accounts, have been cited as justification for this Rule to Show Cause.

Pursuant to § 64.2-1200, of the Code of Virginia, "[e]ach commissioner of accounts **shall**

retain the power of supervision over every account, matter, or thing referred to him until a final

account is approved for such account [...]" (Emphasis added). Additionally, § 64.2-1203, of

the Code of Virginia, requires that, "[c]ommissioners of accounts, assistants, and deputies **shall**

**not** have the power to punish any person for contempt for failure to appear or to produce

documents or papers, but may certify the fact of such nonappearance or failure to produce to the

circuit court, which may impose penalties for civil contempt as if the court had issued the

subpoena." (Emphasis added.)

Petitioners have failed to state any facts which indicate that the Commissioner of Accounts overseeing Respondent's filings has sought any such remedy from this Court to date. § 64.2-1204, of the Code of Virginia, clearly delineates the proper remedies available to Petitioners should they have concerns regarding Respondent's administration of the Estate. Clearly, a petition seeking a contempt finding by this Court is at odds with the laws of the Commonwealth of Virginia.

WHEREFORE, Respondent moves this Honorable Court to dismiss the pending Show Cause Summons due to this Court's lack of jurisdiction to hear the above-styled matter. Additionally, Respondent asks for attorney fees for having to defend against this wrongful action.

KIRA FERGUSON
EXECUTRIX FOR THE ESTATE OF
WILLIAM SANDREL FERGUSON
*by Counsel*

COUNSEL:

Flux J. Neo, Esq.
Virginia State Bar No. 78873
Flux J. Neo Law Firm, PLLC
P.O. Box 188
Tazewell, VA 24651
Phone: (276) 988-7996
Fax: (276) 644-2622
Email: Office@NeoLaw1.com

## CERTIFICATE

I hereby certify that a true and accurate copy of the foregoing was FAXED to Alejandro Emilio Gomez, Esq. counsel for Petitioners, at (276) 228-0687 on August 14, 2023.

Flux J. Neo, Esq.

# EXHIBIT B

## VIRGINIA: IN THE CIRCUIT COURT OF WYTHE COUNTY

VALIDATE CASE PAPERS

KIRA FERGUSON, individually and
as Executrix of the
ESTATE OF WILLIAM S. FERGUSON,
DECEASED, and SHANNON FERGUSON,
in her own right,
*Petitioners,*

**Case No.:**

v.

SUSAN DOONAN BIELSKI,
*Defendant.*

## COMPLAINT

COMES NOW Plaintiffs, Kira Ferguson, individually and as the Executrix of the Estate

of William S. Ferguson, Deceased, and Shannon Ferguson, in her own right, by and

through counsel, hereby files this Complaint and in support thereof states as follows:

## THE PARTIES

1.      Plaintiff, Kira Ferguson, is the biological daughter and Executrix of her late father's

estate, William S. Ferguson, Deceased.

2.      Plaintiff, Shannon Ferguson, resides in the Commonwealth of Pennsylvania.

3.      Plaintiff, Shannon Ferguson, is likewise the biological daughter of the Decedent,

William S. Ferguson.

4.      Defendant, Susan Doonan Bielski, resides in the state of New Hampshire.

5.      Defendant, Susan Doonan Bielski, is the stepdaughter of the decedent, William S.

Ferguson, by and through his marriage to Joyce Doonan, who preceded him in death.

## JURISDICTION AND VENUE

6.      This matter stems from the untimely death of Mr. William Ferguson, who took his

own life, on October 14, 2021, with the assistance, provocation, and participation of Defendant,

Susan Doonan Bielski, in Wythe County Virginia.

7.  Plaintiff, Kira Ferguson, resides in Wythe County, Virginia.

8.  Plaintiff, Kira Ferguson, as of the filing of this Complaint, serves as the Executrix

for William S. Ferguson's Estate, in Wythe County, Virginia.

9.  Various real properties are located in Wythe County, Virginia, and are a part of the

Estate at issue in this matter.

## FACTUAL BACKGROUND

10.  William S. Ferguson and Joyce Doonan were married for approximately thirty (30)

years.

11.  At the time of their union, both William and Joyce had children from previous

marriages.

12.  Joyce Doonan (deceased) had two biological daughters, Sandy Doonan and Susan

Doonan Bielski.

13.  Defendant, Susan Doonan Bielski, lived in and was educated in New England at

various boarding schools, during college and through law school.

14.  William Ferguson's biological daughters are Kira Ferguson and Shannon Ferguson,

Plaintiffs in this matter.

15.  Decedent, William S. Ferguson, was able to acquire various properties, which

included a mobile home park, garages, storage units, horse farm, as well as a residence that sits on

thirty-two (32) acres of land. All such assets are believed to be in Wythe County, Virginia.

16.  Joyce Doonan, mother to Defendant, graduated from medical school, and

ultimately, became an anesthesiologist working in and around Wytheville, Virginia, for over twenty

(20) years.

17.     Together, the Decedents, Joyce and William, were able to build a comfortable life for themselves and amassed an Estate worth approximately $2,000,000.00.

18.     Unfortunately, in January 2021, Joyce Doonan passed unexpectedly, thereby, leaving Mr. William Ferguson her entire stare of the estate.

19.     Shortly, after Joyce Doonan's death, in February 2021, Mr. Ferguson changed his Last Will and Testament.

20.     Originally, Mr. Ferguson's Will appointed Joyce as his Executrix and bequeathed all his assets to her. He only changed the will after her passing.

21.     The current Last and Testament dated February 24, 2021, directed that all assets be sold, with the proceeds to be divided as follows: Sandy Doonan 30%, Susan Doonan Bielski 30%, Kira Ferguson 20% and Shannon Ferguson 20%.

22.     Additionally, the Will appointed Sandy Doonan to serve as the Executrix of the Estate, however, Sandy Doonan relinquished her right so serve as Executrix.

23.     Mr. Ferguson's last wishes specified that if Sandy was unable or unwilling to serve, Kira Ferguson was to then be appointed in her place.

24.     In the months following his wife's death, Mr. Ferguson fought with depression. Mr. Ferguson struggled to cope with the death of his wife, having been diagnosed by his doctor with depression and suicidal ideations.

25.     Medical records reflect that he should reach out to a crisis center for help and that various medications were suggested to him and/or prescribed.

26.     In addition to grieving the loss of his wife, Mr. Ferguson was also battling health concerns that included kidney issues and partial blockage of his carotid artery.

27.     In September 2021, Mr. Ferguson suffered a stroke. Although it was not debilitating, Mr. Ferguson still experienced residual effects. Most significantly, he became physically weaker, increasing his risk of falls.

28.     His September, 2021, hospitalization saw his doctor additionally discuss the blockages to his carotid arteries. Physicians at Roanoke Memorial Hospital opined that they did not believe that Mr. Ferguson was a good surgical candidate due to his renal issues and, thus, were reluctant to address and/or treat the blockages.

29.     Shortly after his discharge from Roanoke Memorial, Mr. Ferguson's daughter, Kira Ferguson, decided to reach out to the hospital at the University of Pennsylvania in Philadelphia.

30.     After speaking with a doctor at the Hospital, both Kira and Mr. Ferguson were inspired with newfound confidence that a surgeon there would be able to perform the necessary operation to unblock his arteries, leading to Mr. Ferguson making plans to go to Philadelphia with his daughter, Kira.

31.     Mr. Ferguson's now optimistic outlook post-surgery rekindled his historic interest in modifying race cars and racing them himself.

32.     In fact, Mr. Ferguson asked his long-time racing partner to finish building a car that he now planned to race.

33.     Delivery of said car occurred September 26, 2021, and led to Mr. Ferguson personally test driving it.

34.     Despite this new hopefulness, Mr. Ferguson still struggled to cope with the death of his wife, as well as his own health issues, with friends noting that he still seemed sad.

35.     This did not deter him though as he continued to make plans to go to the hospital of the University of Pennsylvania.

36.     On October 11, 2021, Defendant, Susan Doonan Bielski, came to Virginia unexpectedly.

37.     At that time, another family member named Perry was scheduled to take Mr. Ferguson to Pennsylvania for his medical appointments.

38.     Defendant asserted that she was going to take Mr. Ferguson to Pennsylvania, causing Perry to cancel his plans to do so.

39.     The expectation was that on October 14, 2021, Mr. Ferguson would travel to Pennsylvania and, once there, he would be admitted for evaluation and treatment of his blockages.

40.     This trip did not occur.

41.     In the three (3) days that Defendant was alone with Mr. Ferguson prior to the trip, she initiated and sustained a systematic push to encourage his suicide.

42.     Home surveillance and other evidence has led Plaintiffs to believe that Defendant spent the three days telling Mr. Ferguson that he had nothing to live for.

43.     Further, that same surveillance footage has led Plaintiffs to believe that Defendant also reinforced and encouraged Mr. Ferguson to dwell on his wife's death.

44.     On the morning of October 14, 2021, Defendant took her mother's ashes and began spreading them under a tree on the property that her mother and Mr. Ferguson used to sit under together.

45.     Plaintiff's believe that this act on Defendant's part drove Mr. Ferguson to a new low emotionally.

46.     Shortly after Defendant scattered Mr. Ferguson's wife's ashes, he took his life.

47.     The in-home camera system also shows Defendant's active encouragement in Mr. Ferguson's preparation of his suicide note, going so far as to helping him spell out the word

"*arrangements*" in said note.

48.     Evidence and belief suggest that Defendant additionally directed where he should shoot himself ("not in the head... or... in the house"), given that the chairs in the yard were arranged nearly in the exact spot where Defendant had spread the ashes, being also the location where Mr. Ferguson then shot himself.

49.     Upon finishing his suicide note, Mr. Ferguson prepared the checks for his funeral arrangements, and then retrieved his .380 Ruger and began loading the weapon.

50.     Once loaded, Mr. Ferguson's walked outside to the area of the ashes and chairs. Video shows Defendant walking outside to the same area several seconds later.

51.     Mr. Ferguson's dog remained kept in his office, facing the yard where he eventually shot himself.

52.     Defendant took up the seat next to Mr. Ferguson a few feet away.

53.     Mr. Fergson aimed the gun at his chest and pulled the trigger while Defendant sat and watched.

54.     After Mr. Ferguson shot himself, he did not die instantly but, instead, suffered profoundly.

55.     Defendant took no immediate steps to render any aid or call 911 for help.

56.     Instead, she went to seek out a neighbor down the road, at which time she did finally call 911 at the neighbor's behest and direction.

57.     The neighbor came over to Mr. Ferguson's house and immediately told her to call the police as he began to try to help Mr. Fergson.

58.     He instructed her to get him a towel so that he could apply pressure to the wound.

59.     According to the neighbor, Defendant did not move with the haste that the

circumstances warranted.

60.  Defendant did give a self-serving statement to the police upon their arrival on scene.

61.  Defendant, upon Plaintiffs' information and belief, waited only two hours before she contacted the attorney who wrote Mr. Ferguson's will requesting a "reading of the will" in order to find out what her share of the Estate would be.

62.  Defendant continued to press the attorney numerous times inquiring about the Estate.

63.  It is believed that on the day of Mr. Ferguson's death Susan called the attorney even before she called her sisters.

64.  Defendant clearly acted at all times with callous disregard for the feelings and concerns of others or the well-being of Mr. Ferguson.

65.  Defendant's primary concern was with her own enrichment from this tragic event.

66.  Sadly, Mr. Ferguson's may have dog witnessed the entire event, with footage showing the dog wailing as Mr. Ferguson shot himself.

67.  To add insult to injury, Defendant took the dog home with her.

## PROCEDURAL POSTURE

68.  Mr. William Ferguson died on October 14, 2021.

69.  Shortly thereafter, Sandy Doonan renounced her status as Executrix.

70.  Being next in line pursuant to Mr. Ferguson's Will, Plaintiff, Kira Ferguson, accepted her role as Executrix.

71.  In October 2021, probate of the Estate began in Wythe County, Virginia.

72.  Assets are still in the process of being appraised and prepared for sale.

## COUNT I - INJUNCTIVE RELIEF

73.     Plaintiffs incorporate by reference paragraphs 1 through 72 as if fully set forth

herein.

74.     Defendant took an active role in facilitating Mr. Ferguson's suicide.

75.     In-home footage of the suicide corroborates this fact.

76.     Virginia Code § 8.01-622.1(a) states that:

*"Any person who knowingly and intentionally, with the purpose of assisting another person to commit or attempt to commit suicide, (i) provides the physical means by which another person commits or attempts to commit suicide or (ii) participates in a physical act by which another person commits or attempts to commit suicide shall be liable for damages as provided in this section and may be enjoined from such acts."*

77.     Defendant knowingly and intentionally assisted Mr. Ferguson to commit suicide.

78.     Additionally, the same statute states that:

*(c) A spouse, parent, child or sibling of a person who commits or attempts to commit suicide may recover compensatory and punitive damages in a civil action from any person who provided the physical means for the suicide or attempted suicide or who participated in a physical act by which the other person committed or attempted to commit suicide.*

*See* VA Code Ann. § 8.01-622.1(c).

79.     Plaintiffs, as the children Mr. Ferguson, are deprived of their father due to the

callous actions and conduct of Defendant, Susan Doonan Bielski, who preyed on his depression

and health concerns for her own personal financial benefit.

80.     Defendant had direct and personal knowledge of Mr. Ferguson's mental state and

took no steps to contact authorities in order to avoid his suicide.

81.     Defendant's conduct was tantamount to "grooming" Mr. Ferguson to believe that

suicide was the only path to ending his depression and mental anguish.

82.     Defendant, an attorney by trade, has a heightened awareness of the importance of

mental health issues as they affect human behavior and is expected to assist persons who may harm

themselves or others.

83.   Defendant did not contact any person, professional, or organization to assist her step-father in his suicidal depression.

84.   Defendant oversaw all aspects of Mr. Ferguson's suicide, have aided him in the writing of his suicide note, selecting the location where he would eventually kill himself (spreading her mother's ashes there), arranging two plastic lawn chairs next to one another, to only sit down in one to wait for Mr. Ferguson to pull the trigger, and to then render no substantive aid as he sat dying.

85.   Defendant's stood to personally profit from this conduct as an heir to the Estate, a fact that she knew at the time she was orchestrating this tragedy.

86.   Mr. Ferguson is survived by certain beneficiaries who have sustained financial and pecuniary loss as a result of the death of their father, suffering mental anguish, emotional loss and companionship as children of Mr. Ferguson.

## COUNT II – WRONGFUL DEATH

87.   Plaintiffs incorporate by reference paragraphs 1 through 86 as if fully set forth herein.

88.   Defendant's conduct was willful and wanton and demonstrated a complete and total disregard for the wellbeing of Mr. Furguson.

89.   Defendant owed Mr. Ferguson a duty of reasonable care given her awareness of his ongoing anguish and suicidal ideations.

90.   Defendant's encouraging Mr. Ferguson to commit suicide was wholly consistent with a breach of this duty.

91.   But for Defendant's conduct, Mr. Ferguson would have likely continued to live.

92.    Had Mr. Furguson survived, he would have had his own claim again Defendant in this matter due to the above consideration.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

A.    Enter judgment against Defendant for compensatory damages in the amount of not less than $2,000,000.00, or such other amount as shall be proven at trial, with prejudgment interest as applicable.

B.    Enter judgment against Defendant for punitive damages in the amount of $4,000,000.00.

C.    Enjoin Defendant from receiving any portion of the Estate of William S. Ferguson.

D.    Impose a constructive trust over any real or personal property Defendant in entitled to pursuant to the terms of the Will of William S. Ferguson, Deceased.

E.    Name the remaining heirs, pursuant to the Will of William S. Ferguson, as the sole beneficiaries of the trust.

F.    Divide Defendant's share of the Estate, once in trust, evenly between the remaining heirs/beneficiaries pursuant to the Will/constructive trust.

G.    For an award of attorney's fees and costs from Defendant as a result of her violation of Virginia law and the need for Plaintiffs to prosecute this matter.

H.    For any other relief appropriate under the circumstances.

I.    For a jury trial on this matter.

KIRA FERGUSON, individually and
as Executrix of the
ESTATE OF WILLIAM S. FERGUSON,
DECEASED, and SHANNON FERGUSON,
in her own right.
*by Counsel*

COUNSEL:

_____

Flux J. Neo, Esq.
Virginia State Bar No. 78873
Flux J. Neo Law Firm, PLLC
P.O. Box 188
Tazewell, VA 24651
Phone: (276) 988-7996
Fax: (276) 644-2622
Email: Office@NeoLaw1.com

PRO HAC VICE COUNSEL PENDING:

Gerard K. Schrom /s/

_____

Gerard K. Schrom, Esq.
Pennsylvania State Bar No. 39282
Schrom and Schaffer, P.C.
4 West Front Street
Media, PA 19063
Phone: (610) 565-5050
Fax: (610) 565-2980
Email: gschrom@schromandshaffer.com

**EXHIBIT C**



Phone 276-228-8500
Fax 276-228-6655
www.adamsdelp.com

August 15, 2023

Kira L. Ferguson, Executor
William S. Ferguson Estate
225 Sandrel Lane
Wytheville, VA 24382

Dear Ms. Ferguson,

This letter is to confirm and specify the terms of our engagement with you and to clarify the nature and extent of the services we will provide.

You acknowledge that we will prepare all required Accounts for Decedent's Estate with Randy Jones, Commissioner of Accounts in Wythe County. You acknowledge that the first accounting is due Friday, August 18, 2023, and that we have advised you that we cannot prepare a complete and accurate accounting by then. Due to the time of entering this engagement, we will require an extension of time of at least 10 weeks to complete the required first accounting. It may take longer if missing items take longer to collect.

Our fee for service will be $220 per hour plus any out-of-pocket expenses. Our bills are due at the date of the invoice with a monthly finance charge of 1% for any balances not paid within thirty days.

If the services and terms outlined are in accordance with your understanding of our engagement, please sign in the space provided below.

Sincerely,

Adams & Delp, P.C.

Daniel P. Delp

The foregoing is in accordance with my understanding of your engagement to provide accounting services. The terms described in this letter are acceptable and are hereby agreed to.

AGREEED AND ACCEPTED

By: _____
Title: _exec_____
Date: _8/15/23_____



STEWART R. POLLOCK
DIRECT: 804 864-4832
FAX: 804 421-6251
spollock@moranreevesconn.com

September 19, 2023

**VIA U.S. MAIL AND EMAIL**
Wyth County Circuit Court
Circuit Court Building
225 S. Fourth Street
Room 105
Wytheville, VA 24382

      **Re:**   **Kira Ferguson, individually and as Executrix of the Estate of William S. Ferguson, Deceased, and Shannon Ferguson, in her own right, v. Susan Doonan Bielski**
          **Norfolk Circuit Court – Case Number: CL23-1094**

Dear Mr. Musser:

     Enclosed please find the Defendant, Susan Doonan Bielski's *Notice of Filing Notice of Removal* in the above referenced matter.

     Should you have any questions, please do not hesitate to contact me.

                        Sincerely yours,

                        *SRPollock*

                        Stewart R. Pollock, Esq.

SRP/bjm
Enclosure

cc:  Kathleen M. McCauley, Esquire *(via email w/ enclosure)*
     Flux J. New, Esquire (via email w/ enclosure
     Gerard K. Schrom, Esquire (via email w/ enclosure



VIRGINIA: IN THE CIRCUIT COURT OF WYTHE COUNTY

KIRA FERGUSON, individually
and as Executrix of the ESTATE OF WILLIAM
S. FERGUSON, DECEASED, and SHANNON
FERGUSON, in her own right,

        Plaintiffs,

v.                        **Case No. CL23001094-00**

SUSAN DOONAN BIELSKI,

        Defendant.

## NOTICE OF FILING NOTICE OF REMOVAL

PLEASE TAKE NOTICE that on September 19, 2023, Defendant Susan Doonan Bielski, by counsel, filed a Notice of Removal of this case from the Circuit Court of the County of Wythe, Virginia, to the United States District Court for the Western District of Virginia, Abingdon Division. A copy of the Notice of Removal is attached hereto as **Exhibit A** and incorporated herein. Pursuant to 28 U.S.C. § 1446, Defendant hereby requests that this Court proceed no further unless and until this case is remanded.

                              **SUSAN DOONAN BIELSKI**

                              By: _SR Pollock_

                              Kathleen McCauley, Esquire (VSB # 39028)
                              Stewart R. Pollock, Esquire (VSB # 92466)
                              MORAN REEVES & CONN PC
                              1211 E. Cary Street
                              Richmond, Virginia 23219
                              Telephone: (804) 421-6250
                              Facsimile: (804) 421-6251
                              lmcmurdo@moranreevesconn.com
                              spollock@moranreevesconn.com
                              *Counsel for Susan Doonan Bielski*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September, 2023 a true and accurate copy of the

foregoing *Notice of Filing Notice of Removal* was filed electronically on the Western District of

Virginia Document Filing System (CM/ECF), served by electronic mail (PDF attachment) and

by U.S. mail, postage prepaid, to counsel for plaintiff and served upon all other counsel of record

via electronic mail (PDF attachment) as follows:

> Flux J. Neo, Esquire (VSB # 78873)
> Flux J. New Law Firm, PLLC
> P.O. Box 188
> Tazewell, Virginia 24651
> Telephone: (276) 988-7996
> Facsimile: (276) 644-2622
> Office@NewLaw1.com
> *Counsel for Plaintiff*

> Gerard K. Schrom, Esquire (VSB # 39282)
> Schrom and Schaffer, P.C.
> 4 West Front Street
> Media, Pennsylvania
> Telephone: (610) 565-5050
> Facsimile: (610) 565-2980
> gschrom@schromandshaffer.com
> *Pro Hac Vice Counsel*

> **SUSAN DOONAN BIELSKI**
>
> By: *SR Pollock*
>
> Kathleen McCauley, Esquire (VSB # 39028)
> Stewart R. Pollock, Esquire (VSB # 92466)
> MORAN REEVES & CONN PC
> 1211 E. Cary Street
> Richmond, Virginia 23219
> Telephone: (804) 864-4832
> Facsimile: (804) 421-6251
> kmccauley@moranreevesconn.com
> spollock@moranreevesconn.com
> *Counsel for Susan Doonan Bielski*