**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division**

| | |
|---|---|
| KIRA FERGUSON, individually and as Executrix of the ESTATE OF WILLIAM S. FERGUSON, DECEASED, and SHANNON FERGUSON, in her own right, <br><br> Plaintiffs, <br><br> v. <br><br> SUSAN DOONAN BIELSKI, <br><br> Defendant, | Civil Action No. 1:23-cv-00032 |

**DEFENDANT SUSAN DOONAN BIELSKI'S
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION</u>**

Defendant Susan Doonan Bielski ("Bielski"), by counsel, hereby moves this Court under Federal Rules of Civil Procedure Rule 12(b)(2), and respectfully submits this motion to dismiss for lack of personal jurisdiction, because Bielski is not a resident of Virginia and had not engaged in any action that would permit this Court to exercise specific personal jurisdiction over her. In support thereof, Bielski states as follows:

**<u>INTRODUCTION</u>**

This Court neither has general personal jurisdiction over Bielski because she is a citizen of New Hampshire, nor does this Court have specific personal jurisdiction over her. Because Bielski is a nonresident defendant, the only way that this Court can exercise jurisdiction over Bielski is if she engaged in tortious activity within Virginia purposefully availing herself of this jurisdiction's privileges and that it would be constitutionally reasonable for the Court to exercise jurisdiction over Bielski. Plaintiffs have the burden of showing by a preponderance of the evidence that Bielski engaged in tortious activity in Virginia sufficient to constitute "purposeful availment." Plaintiffs

have not alleged facts sufficient to meet this standard and, moreover, cannot produce the evidence necessary to meet their burden.

For this Court to exercise jurisdiction over a nonresident defendant, Plaintiffs must show that a Virginia statute authorizes jurisdiction in these specific circumstances and, secondarily, that this exercise of jurisdiction comports with the Due Process Clause. The only statutory basis for Virginia to exercise jurisdiction here is based upon Plaintiffs' contention that Bielski engaged in tortious activity that caused injury – namely, wrongful death – in Virginia. Of course, this creates a chicken-and-egg conundrum as the Court must have personal jurisdiction over Bielski before it can decide the ultimate question of whether Bielski committed a tort in Virginia. Courts resolve this circularity problem by requiring the plaintiff to meet her burden of proof and present <u>evidence</u> --- not mere allegations -- showing that the nonresident defendant purposefully availed herself of this jurisdiction in order to survive a jurisdictional challenge.

Here, Plaintiffs cannot show that Bielski has engaged in any tortious act in Virginia. The allegations in the Complaint simply do not meet the elements of any tort recognized by Virginia law. Plaintiffs cannot adequately plead – much less prove – that Bielski <u>owed a duty</u> to Mr. Ferguson to prevent him from committing suicide, as she was not a medical professional. Nor can Plaintiffs show that Bielski <u>breached</u> that duty: the only allegations are out-of-context words, but the statute cited by Plaintiffs makes clear that words without tortious actions are insufficient to state a claim. Likewise, Plaintiffs cannot show that Bielski's actions <u>caused</u> Mr. Ferguson's death; the allegations clearly state that Mr. Ferguson made a conscious decision to voluntarily end his own life. Even if Plaintiffs satisfied these elements, Mr. Ferguson's voluntary actions still constitute a superseding/intervening event and, notably, an illegal one. Under either circumstance, Plaintiffs' claim fails.

In short, Plaintiffs' false and offensive allegation that Bielski is responsible for the suicide of her step-father – which appears to be nothing more than an aggressive litigation tactic designed to divert authority from the Court already handling the pending parallel probate action – is legally and factually insufficient. This Court cannot exercise general personal jurisdiction over Bielski. The only possible way for Bielski, a New Hampshire resident, to be subject to this Court's jurisdiction is if she committed a tort here. Plaintiffs have the burden of proving that Bielski engaged in a tortious act here; Plaintiffs have no facts to support this claim. Furthermore, the allegations – even if they were true and supported by evidence – rise to the level of a tort recognized in Virginia.

Accordingly, this case should be dismissed for lack of personal jurisdiction.

## **BACKGROUND**

This case arises out of the tragic death of William S. Ferguson, the biological father of the Plaintiffs and the stepfather of Bielski. Mr. Ferguson married Joyce Doonan, MD, a local physician and Bielski's mother, in 1988. After 33 years of marriage, Joyce Doonan Ferguson died suddenly in January 2021, leaving Mr. Ferguson heartbroken. In the months following Joyce's death, Mr. Ferguson – a 78-year-old, two-time survivor of cancer with multiple co-morbid diagnoses – began to experience a decline in his health. Less than a year after Joyce's death, Mr. Ferguson decided to end his life.

Before he died, Mr. Ferguson made conscious decisions about how his estate (which included the assets of Dr. Doonan after her death) should be divided. Mr. Ferguson's decisions about how to divide his estate were clearly set forth in his Last Will and Testament. The parties are engaged in a separate litigation about Mr. Ferguson's Last Will and Testament: *Susan Doonan*

*Bielski and Sandra B. Doonan v. Kira Ferugson, Executrix for the Estate of William Sandrel Ferguson*, Wythe County Circuit Court Civil Case No. CWF21-240-00.[1]

On August 18, 2023, Plaintiffs filed this Complaint in the Circuit Court for Wythe County. Plaintiffs seek damages alleging Bielski caused Mr. Ferguson to commit suicide. Compl. ¶¶ 73-92. Additionally, Plaintiffs seek to enjoin Bielski from "receiving any portion of the Estate of William S. Ferguson" which, according to Mr. Ferguson's Last Will and Testament, would provide Bielski with a 30% share of his Estate. Compl. ¶ 21; Prayer for Relief, C.

On September 19, 2023, Bielski timely filed her Notice of Removal, due to complete diversity of the parties and the amount in controversy exceeding $75,000. On September 20, 2023, the matter was removed from the Circuit Court for Wythe County to the United States District Court for the Western District of Virginia at Abingdon Division.

The Complaint against Bielski should be dismissed because this Court lacks personal jurisdiction over Bielski.

**LEGAL STANDARD**

Before a court can hear a matter, the plaintiff must establish that the court has personal jurisdiction over a defendant. This is accomplished in one of two ways. First, a court may have general jurisdiction over a defendant if the defendant resides within that court's jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."). Alternatively, a plaintiff may establish specific personal jurisdiction over a defendant by first showing "whether the applicable state law will permit the exercise of long-arm jurisdiction over the defendant." *Alton v. Wang*, 941 F. Supp. 66, 67 (W.D. Va. 1996). Second, Plaintiffs must

---

[1] Any question about the division of Mr. Ferguson's estate should be resolved in the underlying probate matter, not here.

show the continuation of the suit in the jurisdiction is consistent with traditional notions of fair play and substantial justice. *RCI Contrs. & Eng'rs, Inc. v. Joe Rainero Tile Co.*, 666 F. Supp. 2d 621, 623 (quoting *Int'l Shoe Co. v Wash.*, 326 U.S. 310, 320 (1945)).

The Court then applies a three-part test to determine whether specific personal jurisdiction has been established. The test considers "(1) the extent to which the defendant 'purposefully availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *RCI Contrs.*, 666 F. Supp 2d at 623 (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

Once a defendant challenges a court's personal jurisdiction, the plaintiff bears the "burden to establish that personal jurisdiction exists over the out-of-state defendant." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002). Once challenged, "the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). "In response to a defendant's challenge to personal jurisdiction, a plaintiff is required to make a *prima facie* showing that jurisdiction over the defendant is proper." *James v. Subaru of Am., Inc.*, 433 F. Supp. 3d 933, 938 (W.D. Va. 2020) (citing *Hawkins v. i-TV Digitális Távközlési zrt.*, 935 F.3d 211, 226 (4th Cir. 2019)). Unlike motions under Rule 12(b)(6), which look only to the sufficiency of the pleadings, after a jurisdictional challenge the parties are "given the opportunity to present all relevant evidence and argument to the court regarding personal jurisdiction" at which point "'the plaintiff must carry the burden to establish personal jurisdiction by a preponderance of the evidence.'" *Id.* (quoting *Sneha Media & Entm't, LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 197 (4th Cir. 2018)).

# ARGUMENT

## I. This Court Does Not Have General Jurisdiction Over Bielski

As an initial matter, there is no general jurisdiction over Bielski. Courts only have general jurisdiction over those domiciled within that jurisdiction. *See Goodyear Dunlop Tires Operations, S.A.,* 564 U.S. at 924. Bielski is a citizen of New Hampshire. Compl. ¶ 4. General jurisdiction can also be established when a "defendant has unrelated, general contacts with the forum state that can be characterized as 'continuous and systematic.'" *Boyd v. Green*, 496 F. Supp. 2d 691, 700 (W.D. Va. 2007). Plaintiffs' Complaint alleges Bielski's only contacts with the Commonwealth to be an unexpected visit for three days. Compl. ¶¶ 36, 41. This visit is insufficient to establish "continuous and systematic" contact. Accordingly, this Court does not have general jurisdiction over Bielski.

At this point, the analysis shifts to whether Plaintiffs can meet their burden of establishing a *prima facie* case against Bielski and, if so, whether Plaintiffs can produce sufficient evidence to meet their burden of "establish[ing] personal jurisdiction by a preponderance of the evidence." *James*, *supra,* 433 F. Supp. 3d at 938. Unless Plaintiffs can state a *prima facie* claim and produce actual evidence to establish jurisdiction, the case must be dismissed. As set out below, Plaintiffs cannot meet this standard. Indeed, Plaintiffs cannot even show the *prima facie* case necessary for them to claim an entitlement to jurisdictional discovery.

## II. This Court Does Not Have Specific Jurisdiction Over Bielski.

Plaintiffs cannot establish specific jurisdiction over Bielski. As a non-resident defendant, Plaintiffs must establish two elements. First, Plaintiffs must show "whether the applicable state law will permit the exercise of long-arm jurisdiction over the defendant." *Alton v. Wang*, 941 F. Supp. 66, 67 (W.D. Va. 1996). Second, Plaintiffs must show the continuation of the suit in the United States District Court for the Western District of Virginia is consistent with traditional

notions of fair play and substantial justice. *RCI Contrs.*, 666 F. Supp. 2d at 623 (quoting *Int'l Shoe Co. v Wash.*, 326 U.S. 310, 320 (1945)).

### A. Virginia's Long Arm Statute

There is no statutory basis for the Court to exercise jurisdiction over Bielski. Virginia's long arm statute, Va. Code § 8.01-328.1, provides a court may exercise personal jurisdiction over an individual "[c]ausing tortious injury by an act or omission in this Commonwealth." Plaintiffs fail to establish how Virginia's long-arm statute exercises personal jurisdiction over Bielski. The barren conclusions are legally and factually insufficient to meet Plaintiffs' burden.

To maintain a cause of action for wrongful death, Virginia requires "(1) the death of a 'person' caused by a wrongful act, neglect or default, etc., and (2) that the act, negligent or default be 'such as would, if the death had not ensured, have entitled the injured party to maintain an action for personal injuries.'" *Lawrence v. Craven Tire Co.*, 210 Va. 138, 140 (1969). The elements in a negligence claim include (1) a duty owed by Defendant, (2) a duty breached by Defendant, (3) a proximate cause, and (4) an injury. *Richardson v. Lovvorn*, 199 Va. 688, 692 (1958).

### B. Plaintiffs Cannot Show Bielski Purposefully Availed Herself of Virginia Law by Engaging in Tortious Activity.

The Complaint alleges that Bielski wrongfully caused the death of Mr. Ferguson, Bielski's stepfather, by encouraging Mr. Ferguson's suicide. Compl. ¶¶ 41-43, 87-92. Bielski vigorously disputes these offensive allegations, but the Court need not reach the facts because these allegations fail to state a legally cognizable claim. Plaintiffs cannot establish that Bielski owed Mr. Ferguson a duty of care, that she breached that duty of care, or that her alleged actions caused his death. But even if Plaintiffs could meet their burden of proving each of these elements by a preponderance of the evidence, Plaintiffs' claims still fail because Virginia does not recognize a personal injury claim based upon words alone. As such, Plaintiffs cannot meet their burden of

establishing that Bielski purposefully availed herself of this jurisdiction by engaging in tortious activity here.

### i. Bielski Did Not Owe a Duty of Care

Bielski did not owe a duty of care to Mr. Ferguson. *See Quisenberry v. Record No. 171494 Huntington Ingalls, Inc.*, 296 Va. 233, 241 (2018) ("Without a legal duty there can be no cause of action for an injury"). It is axiomatic that a person does not owe a duty to the world at large. *Dudley v. Offender Aid & Restoration, Inc.*, 241 Va. 270, 277, 401 S.E.2d 878, 882 (1991) ("A man is entitled to be as negligent as he pleases towards the whole world if he owes no duty to them") (citation omitted). While some courts have recognized a duty to prevent a specific plaintiff from committing suicide, those cases are limited to narrow circumstances where hospitals and physicians undertake a duty to protect patients from self-inflicting injury when there is "knowledge of the patient's mental state and prior suicide attempts." *Blankenship v. Commercial Distribs.,* 16 Va. Cir. 168, 170 (Cir. Ct. 1989); *see also Commercial Distribs., Inc. Blankenship*, 240 Va. 382, 391, 397 S.E.2d 840, 845 (1990) ("Ordinarily, only a qualified health care professional can determine whether a patient's illness has progressed to the point where hospitalization is warranted"). Here, Plaintiffs allege Bielski owed a duty of reasonable care to Mr. Ferguson because she was an attorney. Compl. ¶ 82. No court has ever recognized such a duty that would conflate the roles of doctors and lawyers. A legal education, no matter how valuable, is inadequate to prepare attorneys to undertake such a duty.

### ii. Bielski Did Not Breach Her Duty of Care

Bielski did not breach any duty to Mr. Ferguson. Plaintiffs' Complaint alleges that Bielski's "encouraging Mr. Ferguson to commit suicide was wholly consistent with a breach of this duty." Compl. ¶ 90. Plaintiffs' Complaint is devoid of any alleged "encouraging words" from Bielksi. As noted below, at Section II(B)(v), words alone are insufficient to rise to the level of

8

breach. Moreover, Plaintiffs' Complaint does not even identify any specific statements by Bielski that could be reasonably construed as "encouraging" suicide. Instead, what the allegations reveal is that she visited her ailing stepfather and planned to take him to Pennsylvania to see a doctor about an invasive and risky medical procedure. During that visit, and in anticipation of the inherent risks of undergoing invasive coronary angioplasty, a procedure that involves a balloon catheter to open blocked blood vessels into the heart, Bielski assisted her stepfather in getting his Estate in order. Further, and as discussed in advance with her family members, Bielski spread her mother's ashes around the farm where Mr. Ferguson and Dr. Doonan had lived for three decades. No reasonable person would construe these statements as "encouraging" suicide, and certainly not sufficient to rise to the level of breaching a duty to Mr. Ferguson. To the extent the Court needs to review the evidence to hear all specific statements in context, the Court may order jurisdictional discovery.

### iii. Bielski Did Not Cause Mr. Ferguson's Death

Bielski's alleged actions did not cause Mr. Ferguson's demise. As alleged, Mr. Ferguson caused his own tragic death. Plaintiffs' Complaint alleges that Mr. Ferguson "retrieved his .380 Ruger and began loading the weapon." Compl. ¶ 49. The Complaint alleges that Mr. Ferguson "aimed the gun at his chest and pulled the trigger." Compl. ¶ 53. There is no allegation that he was of unsound mind or incapable of making his own decisions. Rather, the allegations in the Complaint describe someone who, in the face of a terminal illness, made a conscious and tragic decision to end his life by suicide. The Supreme Court of Virginia used the Webster's Third New International Dictionary 2286 (1981) to define suicide as "the deliberate and intentional destruction of his own life by a person of years of discretion and of sound mind." *See Wackwitz v. Roy*, 244 Va. 60, 65 (1992). Accordingly, Bielski was not the proximate cause of Mr. Ferguson's death.

### *iv.* *Mr. Ferguson's Actions Cut off the Chain of Causation*

Even if Bielski did contribute to the causal chain of events, Mr. Ferguson's intentional act constitutes an intervening or superseding act that cut off the chain of causation. *See Scheffer v. R.R. Co.*, 105 U.S. 249, 252 (1881) (finding suicide as an intervening cause for the deceased's demise after he was injured in a railroad collision).

Further, suicide remains an illegal activity in Virginia. In *Wackwitz,* the Supreme Court of Virginia stated, "as a general rule, 'a party who consents to and participated in an immoral or illegal act cannot recover damages from other participants for the consequences of that act.'" *Wackwitz*, 244 Va. at 64. There is no criminal punishment for suicide in the Commonwealth, but suicide remains a common law crime. *Id.* "[I]f the consent of decedent to the commission of the immoral or illegal act would have been a bar to decedent's right to recover had [he] survived, such consent bars recovery in an action by [his] administrator for [his] wrongful death." *Miller v. Bennett*, 190 Va. 162, 164 (1949); *see also Wackwitz*, 244 Va. at 65-66 (stating that suicide of a deceased with an unsound mind would not be a bar *per se* to the administrator's action). Mr. Ferguson intentionally committed the illegal act of suicide; therefore, barring Plaintiffs' recovery rights as beneficiaries of his Estate. Compl. ¶¶ 49, 53.

### *v.* *Virginia Does Not Recognize a Claim Based on the Facts Alleged.*

Finally, even if Plaintiffs can establish these predicate elements, Virginia does not recognize a claim for encouraging suicide by words alone. Plaintiffs rely upon Va. Code § 8.01-622.1(a). That statute only imposes liability to those who either (a) provide the "physical <u>means</u> by which another person commits or attempts to commit suicide or (b) participate "in a physical <u>act</u> by which another person commits or attempts to commit suicide[.]" Va. Code § 8.01-622.1(a) (emphasis added). Based on the plain language of the statute, Virginia does not impose liability

for words that encouraged suicide unless accompanied by a physical act or the provision of the means to commit suicide.[2]

Plaintiffs have not alleged how Bielski provided physical means for Mr. Ferguson to commit suicide or how Bielski participated in a physical act by which Mr. Ferguson died by suicide under Va. Code § 8.01-622.1.[3] Plaintiffs' Complaint does not identify any actions that fall within the ambit of the cited statute. Plaintiffs' Complaint alleges that Mr. Ferguson engaged in the physical means by retrieving his gun and loading the weapon. Compl. ¶ 49. The Complaint alleges that Mr. Ferguson alone engaged in the physical act by "aim[ing] the gun at his chest and pull[ing] the trigger." Compl. ¶ 53. The allegations against Bielski at most relate to *words*, not *actions*. Compl. ¶¶ 47-48.[4]

Accordingly, Plaintiffs cannot make a *prima facie* showing of personal jurisdiction over Bielski when she did not cause "tortious injury by an act or omission in this Commonwealth." Va. Code § 8.01-328.1.

### C. Traditional Notions of Fair Play and Justice Weigh Against This Court Exercising Personal Jurisdiction Over Bielski.

Plaintiffs also fail in showing personal jurisdiction over Bielski is consistent with traditional notions of fair play and substantial justice. Based on Plaintiffs' Complaint, Bielski's

---

[2] To the extent Virginia – or any other state – enacted legislation aimed at words encouraging suicide that were unaccompanied by actions, that legislation would likely be unconstitutional and violate the First Amendment to the United States Constitution. *See* Ready, Brittani (2017) "Words as Weapons: Electronic Communications that Result in Suicide and the Uncomfortable Truth with Criminal Culpability Based on Words Alone," *Saint Louis University Public Law Review*: Vol. 36 : No. 1 , Article 9. Available at: https://scholarship.law.slu.edu/plr/vol36/iss1/9 ("barring speech that 'advises' or 'encourages' suicide is unconstitutional").

[3] Plaintiffs are limited in their showing for purposes of a jurisdictional analysis how Bielski provided physical means or participated in a physical act regarding Mr. Ferguson's suicide. In *Calder v. Jones*, the United States Supreme Court refused to give weight to First Amendment concerns in a jurisdictional analysis as it would "needlessly complicate an already imprecise inquiry." 465 U.S. 783, 790 (1984)..

[4] The allegation that Bielski assisted in the "preparation of his suicide note" is false, but it would not rise to the level of an actionable tort.

11

contacts with the Commonwealth include Bielski "c[oming] to Virginia unexpectedly" and staying with Mr. Ferguson for three days. Compl. ¶¶ 36, 41. *See Boyd v. Green*, 496 F. Supp. 2d 691, 702 (W.D. Va. 2007) (finding no personal jurisdiction over a defendant doctor who resided in Tennessee and his only contacts with Virginia included a few shopping trips and an e-mail account through a Virginia-based provider). Bielski is not domiciled in the Commonwealth of Virginia. Bielski has committed no tort or caused any injury in Virginia that would permit this Court to exercise jurisdiction over her. Compelling Bielski to defend herself in Virginia offends traditional notions of fair play and substantial justice.

## **CONCLUSION**

The Court should dismiss the Complaint against Bielski because this Court does not have personal jurisdiction over her. She is not a citizen of Virginia and therefore the Court lacks general jurisdiction. Bielski is not subject to specific jurisdiction either because she has not engaged in any intentional or tortious act that would bring her within this Court's power. The allegations in the Complaint do not rise to the level of an actionable tort, as Bielski did not owe a duty to Mr. Ferguson, did not breach a duty, and did not cause his death. Virginia simply does not recognize a claim based on the allegations in the Complaint and, even if such a claim existed, Plaintiffs cannot produce evidence to meet their burden on this jurisdictional challenge.

WHEREFORE, for the foregoing reasons, Bielski respectfully requests this Honorable Court grant this motion to dismiss and dismiss the Complaint against her with prejudice, and grant such other and further relief as this Court deems just and proper.

**SUSAN DOONAN BIELSKI**

By: /s/ Stewart R. Pollock (VSB # 92466)

Kathleen McCauley, Esquire (VSB # 39028)
Stewart R. Pollock, Esquire (VSB # 92466)

MORAN REEVES & CONN PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
kmccauley@moranreevesconn.com
spollock@moranreevesconn.com
*Counsel for Susan Doonan Bielski*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of February, 2024 a true and accurate copy of the foregoing *Motion to Dismiss for Lack of Personal Jurisdiction* was filed electronically on the Western District of Virginia Document Filing System (CM/ECF), served by electronic mail (PDF attachment) and by U.S. mail, postage prepaid, to counsel for plaintiffs and served upon all other counsel of record via electronic mail (PDF attachment) as follows:

> Flux J. Neo, Esquire (VSB # 78873)
> Flux J. New Law Firm, PLLC
> P.O. Box 188
> Tazewell, Virginia 24651
> Telephone: (276) 988-7996
> Facsimile: (276) 644-2622
> Office@NewLaw1.com
> *Counsel for Plaintiff*
>
> Gerard K. Schrom, Esquire (VSB # 39282)
> Schrom and Schaffer, P.C.
> 4 West Front Street
> Media, Pennsylvania
> Telephone: (610) 565-5050
> Facsimile: (610) 565-2980
> gschrom@schromandshaffer.com
> *Pro Hac Vice Counsel*

> **SUSAN DOONAN BIELSKI**
>
> By: /s/ Stewart R. Pollock (VSB # 92466)
>
> Kathleen McCauley, Esquire (VSB # 39028)
> Stewart R. Pollock, Esquire (VSB # 92466)
> MORAN REEVES & CONN PC
> 1211 E. Cary Street
> Richmond, Virginia 23219
> Telephone: (804) 864-4832
> Facsimile: (804) 421-6251
> kmccauley@moranreevesconn.com
> spollock@moranreevesconn.com
> *Counsel for Susan Doonan Bielski*