**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Abingdon Division**

KIRA FERGUSON, individually
and as Executrix of the ESTATE OF WILLIAM
S. FERGUSON, DECEASED, and SHANNON
FERGUSON, in her own right,

                Plaintiffs,                Civil Action No. 1:23-cv-00032

v.

SUSAN DOONAN BLACKWELL,

                Defendant,

**DEFENDANT SUSAN DOONAN BLACKWELL'S**
**MOTION TO DISMISS PURSUANT TO RULES 12(b)(6) AND 12(b)(1) [CORRECTED]**

Defendant Susan Doonan Blackwell ("Blackwell"), by counsel, hereby moves this Court under Federal Rules of Civil Procedure Rules 12(b)(6) and 12(b)(1), and respectfully submits this motion to dismiss for failure to state a claim. In support thereof, Blackwell states as follows:

**INTRODUCTION**

Plaintiffs' Amended Complaint attempts to assert a claim for wrongful death, but the allegations simply do not meet the elements of any tort recognized by Virginia law. Plaintiffs have not adequately pled facts that would impose upon Blackwell a duty to Mr. Ferguson to prevent him from committing suicide, as she was not a medical professional. Nor can Plaintiffs show that Blackwell breached that duty: the only allegations are words taken out-of-context, but the statute cited by Plaintiffs makes clear that words without tortious actions are insufficient to state a claim. Likewise, Plaintiffs cannot show that Blackwell's actions caused Mr. Ferguson's death; the allegations clearly state that Mr. Ferguson made a conscious decision to voluntarily end his own life. Even if Plaintiffs satisfied these elements, Mr. Ferguson's voluntary actions still constitute a

**EXHIBIT A**

superseding/intervening event and, notably, an illegal one. Under either circumstance, Plaintiffs' claim fails.

Plaintiffs also assert claims for injunctive relief and unjust enrichment, both of which are derivative of the wrongful death claim and fail for the same reasons. Additionally, Plaintiffs have not alleged facts sufficient to state a cause of action under either theory.

Finally, Kira Ferguson is no longer the executrix of Mr. Ferguson's Estate. Accordingly, she does not have standing to bring claims on behalf of the Estate.

The Court should dismiss each claim in its entirety. The Court should not grant Plaintiffs leave to amend as the claims asserted in this case – and particularly the claims for unjust enrichment and injunctive relief – are duplicative of the claims asserted in the parallel state court probate action, *Susan Doonan Bielski and Sandra B. Doonan v. Kira Ferguson, Executrix for the Estate of William Sandrel Ferguson*, Wythe County Circuit Court Civil Case No. CWF21-240-00. Under the duplicative litigation doctrine, parallel litigation should be dismissed or, at minimum, stayed pending resolution of the first-filed action.

## BACKGROUND

This case arises out of the tragic death of William S. Ferguson, the biological father of the Plaintiffs and the stepfather of Blackwell. Mr. Ferguson married Joyce Doonan, MD, a local physician and Blackwell's mother, in 1988. After 33 years of marriage, Dr. Joyce Doonan died suddenly in January 2021, leaving Mr. Ferguson heartbroken. Am. Compl. ¶ 19. In the months following Dr. Doonan's death, Mr. Ferguson – a 75-year-old, two-time survivor of cancer with multiple co-morbid diagnoses – began to experience a decline in his physical and mental health. *Id.* at ¶¶ 23-32.

In September 2021, physicians at Roanoke Memorial Hospital informed Mr. Ferguson that his carotid arteries were 100% blocked and, due to his co-morbidities, he was not a candidate for

the life-saving surgery that would be required to unblock his arteries. *See id.* at ¶ 32. Kira Ferguson sought a second opinion from physicians in Philadelphia and scheduled an initial evaluation for Mr. Ferguson in October 2021. Am. Compl. ¶¶ 33-34. Blackwell offered to drive nearly 850 miles from her home in New Hampshire to her stepfather's home in Wytheville, stay with her stepfather for four days, and then transport him to Philadelphia for that appointment. At the time, Kira Ferguson believed Mr. Ferguson was of sufficiently sound mind to control his own medical decisions. *See, e.g.,* Am. Compl. ¶¶ 34, 39 (describing the plans made by Mr. Ferguson and Kira Ferguson to seek a second opinion).

While in Virginia, Blackwell and Mr. Ferguson spent time walking around the family farm and spreading Dr. Doonan's ashes. Am. Compl. ¶ 47. Due to the risk of a proposed medical procedure and his declining health, Mr. Ferguson also asked Blackwell to assist with pre-surgery arrangements, such as creating an inventory of his Estate.

After Mr. Ferguson's death, Kira Ferguson was hurt by her father's decision to provide Blackwell and her biological sister, Sandra Doonan, with a greater share of his Estate (30% each) than was given to his biological children, Kira and Shannon Ferguson (20% each). Am. Compl. ¶ 20. Kira Ferguson perceived that decision as a slight, turning her grief into anger. She became determined to get a greater share of the Estate, even if it meant asserting false allegations against Blackwell in an attempt to overrule her father's express decisions about how to divide his Estate.

On August 18, 2023, Plaintiffs filed a Complaint in the Circuit Court for Wythe County. Plaintiffs seek damages alleging Blackwell caused Mr. Ferguson to commit suicide. Compl. ¶¶ 73-92. Additionally, Plaintiffs seek to enjoin Blackwell from "receiving any portion of the Estate of William S. Ferguson". Compl. ¶ 21; Prayer for Relief, C.

On September 19, 2023, Blackwell timely filed her Notice of Removal, due to complete diversity of the parties and the amount in controversy exceeding $75,000. On September 20, 2023,

3

the matter was removed from the Circuit Court for Wythe County to the United States District

Court for the Western District of Virginia, Abingdon Division.

## **LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a pleading. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matters, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 500 U.S. 544, 570 (2007)). To state a plausible claim, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, the plaintiff must allege facts sufficient to establish all elements of the cause or causes of action asserted. *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002)).

A complaint is "facially plausible" when the facts alleged "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When ruling on a motion to dismiss, the court must "accept the underlined well-pled allegations of the complaint as true" and "construe the facts and underlined reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (emphasis added).

Thus, to survive this Motion, Plaintiffs' Amended Complaint must make sufficient factual allegations to support a cognizable cause of action. *Weller,* 901 F. 2d 387, 391 (4th Cir. 1990). Plaintiffs' Amended Complaint must present sufficient nonconclusory factual allegations

supporting a reasonable inference that Blackwell is liable for an alleged unlawful act or omission. *See Francis v. Giacomelli*, 588 F.3d 186, 196–97 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678–79; *Gooden v. Howard Cnty., Md.*, 954 F.2d 960, 969–70 (4th Cir. 1992)).

## ARGUMENT

### I.  Plaintiffs Have Not Alleged Facts Sufficient to State a Cause of Action for Wrongful Death.

The Amended Complaint asserts three causes of action: Injunctive Relief (Count I), Wrongful Death (Count II), and Unjust Enrichment (Count III). The core allegations relate to the wrongful death claim.[1] To maintain a cause of action for wrongful death, Virginia requires "(1) the death of a 'person' caused by a wrongful act, neglect or default, etc., and (2) that the act, neglect or default be 'such as would, if the death had not ensued, have entitled the injured party to maintain an action for personal injuries.'" *Lawrence v. Craven Tire Co.*, 210 Va. 138, 140 (1969).  The elements in a negligence claim include (1) a duty owed by Defendant, (2) a duty breached by Defendant, (3) a proximate cause, and (4) an injury. *Richardson v. Lovvorn*, 199 Va. 688, 692 (1958).

The Amended Complaint alleges that Blackwell wrongfully caused the death of Mr. Ferguson, Blackwell's stepfather, by encouraging Mr. Ferguson's suicide. Am. Compl. ¶¶ 45-48, 50-52.  Blackwell vigorously disputes these offensive (and implausible) allegations, but the Court need not reach the facts because these allegations fail to state a legally cognizable claim. Plaintiffs cannot establish that Blackwell owed Mr. Ferguson a duty of care, that she breached that duty of care, or that her alleged actions caused his death.

---

[1] As discussed further below, the claim for injunctive relief (which is a remedy, rather than a standalone right of action) and the unjust enrichment claims are both derivative of the wrongful death claim. Because the wrongful death claim fails, the requests for injunctive relief and unjust enrichment fail too.

A. *Blackwell Did Not Owe a Duty of Care*

Blackwell did not owe a duty of care to Mr. Ferguson. *See Quisenberry v. Record No. 171494 Huntington Ingalls, Inc.*, 296 Va. 233, 241 (2018) ("Without a legal duty there can be no cause of action for an injury"). It is axiomatic that a person does not owe a duty to the world at large. *Dudley v. Offender Aid & Restoration, Inc.*, 241 Va. 270, 277, 401 S.E.2d 878, 882 (1991) ("A man is entitled to be as negligent as he pleases towards the whole world if he owes no duty to them") (citation omitted). While some courts have recognized a duty to prevent a specific plaintiff from committing suicide, those cases are limited to narrow circumstances where hospitals and physicians undertake a duty to protect patients from self-inflicting injury when there is "knowledge of the patient's mental state and prior suicide attempts." *Blankenship v. Commercial Distribs.*, 16 Va. Cir. 168, 170 (Cir. Ct. 1989); *see also Commercial Distribs., Inc. Blankenship*, 240 Va. 382, 391, 397 S.E.2d 840, 845 (1990) ("Ordinarily, only a qualified health care professional can determine whether a patient's illness has progressed to the point where hospitalization is warranted"). Here, Plaintiffs allege Blackwell owed a duty of reasonable care to Mr. Ferguson because she was an attorney. Am. Compl. ¶ 83. No court has ever recognized such a duty that would conflate the roles of doctors and lawyers. A legal education, no matter how valuable, is inadequate to prepare attorneys to undertake such a duty.

B. *Blackwell Did Not Breach Her Duty of Care*

Blackwell did not breach any duty to Mr. Ferguson. Plaintiffs' Amended Complaint alleges that Blackwell "oversaw all aspects of Mr. Ferguson's suicide[.]" Am. Compl. ¶ 86. But Plaintiffs do not identify any <u>actions</u> that Blackwell took to cause Mr. Ferguson's death. At most, Plaintiffs allege Blackwell told Mr. Ferguson how to spell the word "arrangements" and then placed two chairs near a tree where she and Mr. Ferguson then spread her mother's ashes. *Id.* As noted below, at Section I(D), words alone are insufficient to rise to the level of breach.

But even if words were sufficient to state a claim, Plaintiffs' Amended Complaint does not plausibly assert that Blackwell encouraged her stepfather to commit suicide. From four days' worth of security footage, Plaintiffs have cherry picked two statements and then stripped them of context to mislead the Court. Am. Compl. ¶¶ 51-52. Even without context, the inferences that Plaintiffs ask the Court to draw are facially unreasonable: no reasonable person would believe that Blackwell spreading her mother's ashes with her stepfather was an act intended to drive her stepfather to suicide. Yet that is the implausible inference Plaintiffs' Amended Complaint would require the Court to draw.

What the allegations reveal instead is that Blackwell visited her ailing stepfather and planned to take him to Pennsylvania to see a doctor about an invasive and risky medical procedure. During that visit, and in anticipation of the inherent risks of undergoing invasive coronary angioplasty, a procedure that involves a balloon catheter to open blocked blood vessels into the heart, Blackwell assisted her stepfather in making pre-surgery arrangements that included creating an inventory of his Estate. No reasonable person would construe such benign and prudent Estate planning as "encouraging" suicide, and certainly not sufficient to rise to the level of breaching a duty to Mr. Ferguson.

### C. Plaintiffs Do Not Allege Facts Sufficient to Find that Blackwell Caused Mr. Ferguson's Death.

Blackwell's alleged actions did not cause Mr. Ferguson's demise. As alleged, Mr. Ferguson caused his own tragic death. Plaintiffs' Amended Complaint alleges that Mr. Ferguson "retrieved his .380 Ruger and began loading the weapon." Am. Compl. ¶ 54. The Amended Complaint alleges that Mr. Ferguson "aimed the gun at his chest and pulled the trigger." Am. Compl. ¶ 58. While Plaintiffs conclude that Mr. Ferguson was "an impaired, vulnerable person[,]" the allegations in the Amended Complaint describe someone who, in the face of a terminal illness, made a conscious and tragic decision to end his life by suicide. The Supreme Court of Virginia

used the Webster's Third New International Dictionary 2286 (1981) to define suicide as "the deliberate and intentional destruction of his own life by a person of years of discretion and of sound mind." *See Wackwitz v. Roy*, 244 Va. 60, 65 (1992). Accordingly, Blackwell was not the proximate cause of Mr. Ferguson's death.

Even if Blackwell did contribute to the causal chain of events, Mr. Ferguson's intentional act constitutes an intervening or superseding act that cut off the chain of causation. *See Scheffer v. R.R. Co.*, 105 U.S. 249, 252 (1881) (finding suicide as an intervening cause for the deceased's demise after he was injured in a railroad collision). There is no dispute about the facts here. The Amended Complaint plainly alleges that Mr. Ferguson put the gun to his chest and pulled the trigger. Am. Compl. ¶ 58. Mr. Ferguson's intentional acts cut off the chain of causation, even when viewing the allegations in the light most favorable to the Plaintiffs.

Further, suicide remains an illegal activity in Virginia. In *Wackwitz,* the Supreme Court of Virginia stated, "as a general rule, 'a party who consents to and participated in an immoral or illegal act cannot recover damages from other participants for the consequences of that act.'" *Wackwitz*, 244 Va. at 64. There is no criminal punishment for suicide in the Commonwealth, but suicide remains a common law crime. *Id.* "[I]f the consent of decedent to the commission of the immoral or illegal act would have been a bar to decedent's right to recover had [he] survived, such consent bars recovery in an action by [his] administrator for [his] wrongful death." *Miller v. Bennett*, 190 Va. 162, 164 (1949); *see also Wackwitz*, 244 Va. at 65-66 (stating that suicide of a deceased with an unsound mind would not be a bar *per se* to the administrator's action). Mr. Ferguson intentionally committed the illegal act of suicide; therefore, barring Plaintiffs' recovery rights as beneficiaries of his Estate.

8

### D. *Virginia Does Not Recognize a Personal Injury Claim Based on Words Alone.*

But even if Plaintiffs had alleged sufficient facts to establish the existence and breach of a duty and that this breach caused Mr. Ferguson's death, Plaintiffs' claims still fail because Virginia does not recognize a claim for encouraging suicide by words alone. Plaintiffs rely upon Va. Code § 8.01-622.1(a). That statute only imposes liability to those who either (a) provide the "physical means by which another person commits or attempts to commit suicide or (b) participate "in a physical act by which another person commits or attempts to commit suicide[.]" Va. Code § 8.01-622.1(a) (emphasis added). Based on the plain language of the statute, Virginia does not impose liability for words that encouraged suicide unless accompanied by a physical act or the provision of the means to commit suicide.[2]

Plaintiffs have not alleged how Blackwell provided physical means for Mr. Ferguson to commit suicide or how Blackwell participated in a physical act by which Mr. Ferguson died by suicide under Va. Code § 8.01-622.1.  Plaintiffs' Amended Complaint does not identify any actions that fall within the ambit of the cited statute. Plaintiffs' Amended Complaint alleges that Mr. Ferguson engaged in the physical means by retrieving his gun and loading the weapon.  Am. Compl. ¶ 54.  The Amended Complaint alleges that Mr. Ferguson alone engaged in the physical act by "aim[ing] the gun at his chest and pull[ing] the trigger." Am. Compl. ¶ 58. The allegations against Blackwell at most relate to *words*, not *actions*. Am. Compl. ¶ 86.[3]

---

[2] To the extent Virginia – or any other state – enacted legislation aimed at words encouraging suicide that were unaccompanied by actions, that legislation would likely be unconstitutional and violate the First Amendment to the United States Constitution. *See* Ready, Brittani (2017) "Words as Weapons: Electronic Communications that Result in Suicide and the Uncomfortable Truth with Criminal Culpability Based on Words Alone," *Saint Louis University Public Law Review*: Vol. 36: No. 1, Article 9. Available at: https://scholarship.law.slu.edu/plr/vol36/iss1/9 ("barring speech that 'advises' or 'encourages' suicide is unconstitutional").

[3] The allegation that Blackwell assisted in the "preparation of his suicide note" is false, but it would not rise to the level of an actionable tort.

## II.    Plaintiffs Fail to Allege Facts Sufficient to State a Claim for an Injunction.

An injunction is a remedy, not a standalone right of action. To the extent Plaintiffs can request injunctive relief as a remedy, this requested relief is dependent upon Plaintiffs prevailing on their wrongful death claim. Because the wrongful death claim fails, the request for injunctive relief fails too.

Additionally, an injunction is an "extraordinary remedy" that requires the proponent to "demonstrate that an adequate and complete remedy cannot be obtained in a court of common law." *Martinson v. Evans*, No. CL-2017-12308, 2018 Va. Cir. LEXIS 18, at *14 (Cir. Ct. Feb. 15, 2018). Plaintiffs have "not specified which type of injunction is sought" but the outcome is the same either way. *Midgette v. Arlington Props.*, 83 Va. Cir. 26, 28 (Cir. Ct. 2011) (dismissing request for injunctive relief based on failure to state a claim). Plaintiffs have failed to "allege irreparable harm or inadequacy of remedy at law." *Id.* Further, Plaintiffs have not alleged a "likelihood that plaintiff[s] will prevail on the merits of the case[.]" *Id.* Plaintiffs have failed to plead the elements necessary for this remedy.

The Court should deny Plaintiffs leave to amend because this claim is duplicative of the claims already before the state court in the probate action.[4] To the extent there is any viable basis for depriving Blackwell of her distributions under Mr. Ferguson's Last Will and Testament, those issues should be decided by the Virginia State Court already handling the administration of the Will.

---

[4] At minimum, if the Court does not dismiss these duplicative claims with prejudice, the Court should stay this case pursuant to the duplicative litigation doctrine because the two lawsuits are parallel. *Mician v. Catanzaro*, No. 2:17-cv-548, 2018 U.S. Dist. LEXIS 241738, at *7 (E.D. Va. Nov. 7, 2018) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 802, 96 S. Ct. 1236, 1239 (1976)).

### III.    Plaintiffs Fail to State a Claim for Unjust Enrichment.

There is no viable claim for unjust enrichment under the facts alleged here. "The doctrine of unjust enrichment effects a 'contract implied in law' requiring one who accepts and receives goods, services, or money from another to make reasonable compensation for those services." *James G. Davis Constr. Corp. v. FTJ, Inc*., 298 Va. 582, 591, 841 S.E.2d 642, 647 (2020). "Typical examples of unjust enrichment involve a payment or overpayment under a mistake of fact [] or the acceptance of services without a contract for those services." *Id.* Unjust enrichment simply does not fit the facts alleged. This is not a matter of quasi-contract. If there is a viable claim here – and there is not – it must be based in tort, not contract.

To plead a claim for unjust enrichment, the plaintiff must identify "(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value." *Eisiminger v. Perspecta, Inc*., 109 Va. Cir. 170, 178 (Cir. Ct. 2022). Plaintiffs have not identified any benefit that either Kira Ferguson or Shannon Ferguson conferred to Blackwell. To the extent any such "benefits" were conferred, Plaintiffs concede that the <u>Estate</u> made those distributions, <u>not Kira Ferguson or Shannon Ferguson</u>. Am. Compl. ¶ 106 ("Defendant accepted the benefit monies of the <u>estate</u>"). While the Amended Complaint is not clear about which Plaintiffs are asserting the claim for unjust enrichment, the allegations are plainly inadequate for either Kira Ferguson or Shannon Ferguson in their individual capacities.

Like the injunctive relief claim, the unjust enrichment claim is derivative of the wrongful death claim because without a finding that Blackwell tortiously caused the death of Mr. Ferguson, there is no basis for her to be deprived of her interests under Mr. Ferguson's Last Will and Testament. And, like the claim for injunctive relief, this claim is wholly subsumed and duplicative

of the claims already at issue in the state court probate matter. The Court should, at minimum, dismiss these claims as an attempt to shop for an alternative forum.

**IV.    Kira Ferguson Lacks Standing to Assert Claims on Behalf of the Estate.**

Kira Ferguson is no longer the Executrix of Mr. Ferguson's Estate and no longer has standing to assert claims on behalf of the Estate. *Bolling v. D'Amato*, 259 Va. 299, 304, 526 S.E.2d 257, 259 (2000) ("plaintiff lacked standing to bring this wrongful death action for the reason that he was not the personal representative of the decedent's estate"). While Kira Ferguson's Amended Complaint asserts claims individually and as "Executrix of her late father's estate" (Am. Compl ¶ 1), Plaintiffs have since admitted that Kira Ferguson was removed from that role. *See* Plaintiffs' Opposition to Blackwell's Motion to Dismiss for Lack of Personal Jurisdiction [ECF 34] at p. 2. As a result, Kira Ferguson no longer has standing to assert claims on behalf of the Estate.

This is fatal to her ability to pursue those claims before this Court. "To prevent 'federal courts [from] exceed[ing] their authority,' the law of Article III standing "confines the federal courts to a properly judicial role" by 'limit[ing] the category of litigants empowered to maintain a lawsuit in federal court.'" *Pitre v. Wal-Mart Stores, Inc*., No. SA CV 17-01281-DOC-DFMx, 2019 U.S. Dist. LEXIS 181052, at *7 (C.D. Cal. Oct. 18, 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (citations omitted)). "The burden of proof for establishing standing [] must be met with adequate support at each stage of the litigation." *Id.* at *8. Kira Ferguson no longer has standing to assert claims on behalf of the Estate and those claims should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

<u>CONCLUSION</u>

The Court should dismiss the Amended Complaint because the allegations do not rise to the level of an actionable tort, as Blackwell did not owe a duty to Mr. Ferguson, did not breach a duty, and did not cause his death. Virginia simply does not recognize a claim based on the

allegations in the Complaint. Plaintiffs have failed to properly allege claims for injunctive relief and unjust enrichment, and, in any event, those claims are barred by the duplicative litigation doctrine. Finally, Kira Ferguson does not have standing to assert claims on behalf of Mr. Ferguson's Estate.

WHEREFORE, for the foregoing reasons, Blackwell respectfully requests this Honorable Court grant this motion to dismiss and dismiss the Amended Complaint against her with prejudice and grant such other and further relief as this Court deems just and proper.

**SUSAN DOONAN BLACKWELL**

By: /s/ Stewart R. Pollock (VSB # 92466)

Kathleen McCauley, Esquire (VSB # 39028)
Stewart R. Pollock, Esquire (VSB # 92466)
MORAN REEVES & CONN PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
kmccauley@moranreevesconn.com
spollock@moranreevesconn.com
*Counsel for Susan Doonan Blackwell*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of July, 2024 a true and accurate copy of the foregoing

*[Corrected] Motion to Dismiss* (previously filed and served on July 10, 2024) was filed

electronically on the Western District of Virginia Document Filing System (CM/ECF), served by

electronic mail (PDF attachment) and by U.S. mail, postage prepaid, to counsel for plaintiffs and

served upon all other counsel of record via electronic mail (PDF attachment) as follows:

Flux J. Neo, Esquire (VSB # 78873)
Flux J. New Law Firm, PLLC
P.O. Box 188
Tazewell, Virginia 24651
Telephone: (276) 988-7996
Facsimile: (276) 644-2622
Office@NewLaw1.com
*Counsel for Plaintiff*

Mary Lynn Tate, Esquire (VSB # 16085)
Tate Law, P.C.
P.O. Box 807
211 West Main Street
Abingdon, Virginia 24212
Telephone: (276) 628-5185
Facsimile: (276) 628-5045
mltate@tatelaw.com
*Counsel for Plaintiff*

Gerard K. Schrom, Esquire (VSB # 39282)
Schrom and Schaffer, P.C.
4 West Front Street
Media, Pennsylvania
Telephone: (610) 565-5050
Facsimile: (610) 565-2980
gschrom@schromandshaffer.com
*Pro Hac Vice Counsel*

**SUSAN DOONAN BLACKWELL**

By: /s/ Stewart R. Pollock (VSB # 92466)

Kathleen McCauley, Esquire (VSB # 39028)
Stewart R. Pollock, Esquire (VSB # 92466)

MORAN REEVES & CONN PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 864-4832
Facsimile:  (804) 421-6251
kmccauley@moranreevesconn.com
spollock@moranreevesconn.com
*Counsel for Susan Doonan Blackwell*