**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division**

KIRA FERGUSON, individually
and as Executrix of the ESTATE OF WILLIAM
S. FERGUSON, DECEASED, and SHANNON
FERGUSON, in her own right,

           Plaintiffs,                   Civil Action No. 1:23-cv-00032

v.

SUSAN DOONAN BLACKWELL,

           Defendant,

## DEFENDANT SUSAN DOONAN BLACKWELL'S
## REPLY IN SUPPORT OF MOTION TO DISMISS
## PURSUANT TO RULES 12(b)(6) AND 12(b)(1)

      Defendant Susan Doonan Blackwell ("Blackwell"), by counsel, submits the following

Reply Brief in support of her Motion to Dismiss under Federal Rules of Civil Procedure Rules

12(b)(6) and 12(b)(1):

## INTRODUCTION

      The Court should put an end to this litigation which is legally deficient and serves only to

compound the tragedy of Mr. Ferguson's death. The wrongful death claims at the heart of the

Amended Complaint belong to the Estate. The only valid administrator of Mr. Ferguson's Estate,

Tara Adams, decided not to pursue the claims against Blackwell. Neither Kira Ferguson nor the

purported new administrator have standing to pursue the wrongful death claims. These claims can

only be pursued by the valid administrator – Tara Adams – and cannot be pursued on an individual

basis by either Kira or Shannon Ferguson. As such, the wrongful death claims should be dismissed.

The other claims in this matter relate to how the Estate's assets should be distributed among Mr. Ferguson's beneficiaries. While this is fairly straightforward – Mr. Ferguson's Will provides explicit instructions about the percentages to be distributed to each of his four beneficiaries – any disputes about how to divide the Estate should be resolved in the Wythe County Circuit Court probate case. Plaintiffs' equitable claims here are wholly duplicative of the claims and defenses that belong in the probate case.

Finally, Plaintiffs' claims fail as a matter of law. Even when all facts are construed in the light most favorable to Plaintiffs, the Amended Complaint does not state a plausible claim for which relief can be granted. Blackwell did not owe a duty to Mr. Ferguson, she did not breach any duty owed to him, and she did not cause his death.

On their face, the spectacular claims in the Amended Complaint are implausible. Seemingly recognizing this, Plaintiffs' Opposition improperly seeks to introduce extrinsic evidence from an affidavit and text messages between the Parties. For this Motion, Plaintiffs are limited to the allegations asserted in the Amended Complaint. Those "facts" are not tethered to reality[1] and instead reflect Plaintiffs' grief-stricken denial and anger arising from the loss of their father.

There is no viable claim here, and the Court should dismiss the Amended Complaint so that the Parties may cease litigating and begin the healing process so desperately needed at this time.

## ARGUMENT

### I.  Kira Ferguson Does Not Have Authority to Bring Claims on Behalf of the Estate.

---

[1] While this Motion looks only at the allegations in the Amended Complaint, Blackwell previously pointed out in her Motion to Dismiss for Lack of Personal Jurisdiction (*See* ECF 11, dated Feb. 26, 2024, at 9) the inconsistencies between the actual evidence here (e.g. the autopsy report, police report, and text messages) and the allegations in the Amended Complaint.

The Amended Complaint (and the Complaint before it) was filed by Kira Ferugson on behalf of the Estate of William Ferguson. Kira and Shannon Ferguson also asserted claims in their individual capacity. The wrongful death claim belongs to the Estate of William Ferguson and must be brought by its personal representative. Va. Code § 8.01-50(C). Kira and Shannon Ferguson do not have standing to assert wrongful death claims in their individual capacit*es. Id*; *Bolling v. D'Amato*, 259 Va. 299, 304 (2000). If there is a viable wrongful death claim, it can only be brought by the properly authorized personal representative of the Estate. *Wackwitz v. Roy*, 244 Va. 60, 63 (1992). Here, the properly authorized personal representative of the Estate is Tara Adams.

Kira Ferguson, the actual named plaintiff purporting to bring claims on behalf of the Estate, does not have standing to pursue a wrongful death claim on behalf of the Estate. This is undisputed. Kira Ferguson is not the administrator of the Estate. Tara Adamas was appointed as the administrator of the Estate and has sole authority to act on behalf of the Estate. *See, e.g.,* ECF 46 (Letter from Plaintiffs' counsel stating Tara Adams was administrator of Mr. Ferguson's estate and would be determining whether the Estate would proceed with this action). Tara Adams alone has the authority to decide whether to pursue this wrongful death action.

Ms. Adams decided not to pursue the wrongful death action. Contrary to Plaintiffs' representations (*Compare* ECF 47 and 48), Ms. Adams did not relinquish her role as administrator. Following a thorough investigation, Ms. Adams determined that continuing the wrongful death claim against Blackwell was not in the best interests of the Estate and implicitly requested this Court dismiss Kira and Shannon Ferguson for lack of standing. When Plaintiffs refused to correct their "misleading" statement that Ms. Adams had declined her role as administrator, her counsel filed a notice to inform the Court that Ms. Adams was maintaining her position as administrator but simply did not intend to use the Estate's assets to pursue the wrongful death claim. *See* ECF 49, B. Rottenborn notice dated Sept. 12, 2024, ¶ 1. Accordingly, the claims brought by Kira

Ferguson on behalf of the Estate should be dismissed, as Ms. Adams is the only party with authority to decide whether the Estate should pursue them.[2] *Id.* Ms. Adams, on behalf of the Estate, has decided that the wrongful death claims should not be pursued.

To get around this fatal problem, Plaintiffs now claim that a new administrator has been appointed, without any notice to the other parties or the administrator. *See* ECF 50-1. However, the new administrator, Thomas Jackson, Jr., could not have "duly qualified" as the administrator under Va. Code section 8.01-50 because Tara Adams had already been appointed as the administrator and there was no need for a co-administrator to be appointed. *See Bolling v. D'Amato*, 259 Va. 299, 303–04 (2000) (citing *Andrews v. Avory*, 55 Va. (14 Gratt.) 229, 236 (1858) (concluding that if an estate already has a personal representative "when the order appointing another administrator is entered, such order is void."). Under Virginia law, once the administrator of an estate has been properly qualified and appointed, "another administrator may not be appointed unless there is a vacancy in the office." *Bartee v. Vitocruz*, 288 Va. 106, 112 (2014). The General Assembly intended there to be a "unity of action" when filing a wrongful death action through a personal representative. *Addison v. Jurgelsky*, 281 Va. 205, 208 (2011).

It is unclear what representations Plaintiffs made to persuade the Wythe County Circuit Court to appoint Mr. Jackson as an administrator because they did so *ex parte* and without notice to the other parties or Ms. Adams. Presumably Plaintiffs made the same statements that were made to this Court (ECF 48) and which Ms. Adams' counsel previously disputed. (ECF 49). Regardless, Mr. Jackson's appointment as administrator is invalid; only Ms. Adams has standing, and she has

---

[2] Once the wrongful death claims are dismissed for lack of standing, the only remaining claims are a request for an injunction and unjust enrichment, both of which relate to the administration of the Estate and distribution of the Estate's assets. Those claims should be dismissed under abatement principles because they ask this Court to rule on an issue already properly before the Wythe County Circuit Court with regard to the administration of the Estate's assets and an affirmative defense that Plaintiffs could raise in that action.

declined to pursue the wrongful death claims in this case. Even if Mr. Jackson had been validly appointed, he would not have authority to overrule Ms. Adams' decision not to pursue the wrongful death claims as co-administrators must act in concert. *Addison*, 281 Va. at 208.

In any event, the First Amended Complaint asserts claims on behalf of Kira Ferguson as the administrator of the Estate, not Mr. Jackson. If Plaintiffs believe Mr. Jackson has been validly appointed, Plaintiffs can file a motion to substitute Mr. Jackson as the plaintiff for the Estate's claims. *Bartee*, 288 Va. at 111; *Bolling*, 259 Va. at 303. Plaintiffs have not done so. Until that motion is granted, Ms. Ferguson remains the party asserting claims on behalf of the Estate. Because she does not have standing to do so, the Court should dismiss the claims brought by the Estate.

## II. The Amended Complaint Fails to State a Claim

The Amended Complaint should also be dismissed because it fails to state a claim for which relief can be granted. Under the facts alleged in the Amended Complaint – and ignoring the improper extrinsic facts that Plaintiffs attached to their Opposition Brief – there is not a viable claim for relief. Simply put, Plaintiffs have not identified facts that would create a legal duty that Defendant Blackwell would have owed to Mr. Ferguson. Nor have Plaintiffs identified facts that would constitute a breach of any duty that Blackwell might have owed to Mr. Ferguson. Similarly, Plaintiffs have not stated facts under which Defendant Blackwell could have caused Mr. Ferguson's death.

Plaintiffs contend Blackwell is tortiously liable for the death of Mr. Ferguson - either by encouraging him to commit suicide or failing to prevent him from doing so. Both theories fail. Under the first theory, Plaintiffs' claim fails because words are not enough to satisfy the participation element of the assisted suicide statute (Va. Code § 8.01-622.1), and Plaintiffs' Amended Complaint does not identify any actions that would fall within that statute's ambit. Plaintiffs have not alleged that Blackwell participated in "a physical act" or provided "the physical

means" to cause Mr. Ferguson's death and therefore this theory fails. The only "actions" that Plaintiffs can identify are that Blackwell told Mr. Ferguson how to spell "arrangements" and placed two chairs near a tree where they had spread her mother's ashes. Am. Compl. ¶ 51, 53. Neither "act" comes close to causing Mr. Ferguson's death. Plaintiffs ask this Court to draw that implausible inference and, in doing so, fail to state a viable claim.

The second theory also fails: Blackwell did not have an affirmative duty to prevent harm to Mr. Ferguson. The general rule is that a person does not owe a duty to the world and, to the extent they owe a duty to avoid unreasonably harming those in their proximity, there is still no affirmative duty to prevent injury to another person. *Schieszler*, 236 F. Supp. at 606 ("Ordinarily, there is no affirmative duty to act to assist or protect another absent unusual circumstances, which justify imposing such an affirmative responsibility"). Plaintiffs attempt to get around this by arguing that there is a special relationship which would impose upon Blackwell the rare and exceptional duty to prevent injury to Mr. Ferguson.

There is no legally cognizable special relationship here. The Supreme Court has provided a limited list of special relationships, such as common carrier-passenger, business proprietor-invitee, innkeeper-guest, and employer-employee. *Burns v. Gragnon*, 283 Va. 657, 669 (2012). The Supreme Court has **"exercised caution in expanding it to include new relationships"** because finding a special relationship so dramatically inverts the general rule by imposing a duty to prevent harm to another. *Id.* (emphasis added). Here, Plaintiffs argue that a stepfather and stepdaughter inherently have a special relationship. Opp. at p. 14 ("Defendant and William had a 'stepfather-stepdaughter' relationship, which in itself is special"). While this may be true in the lay use of those terms, it is not a legally recognized category of "special relationship" for purposes of creating a duty. *Burns*, 283 Va. at 669. This Court should not be the first to recognize this category of special relationships and, instead, should "exercise caution" in transforming the scope of duty.

Plaintiffs point to a series of cases finding a duty to prevent a party from committing suicide, but those cases are not analogous. Far from creating the new category of special relationship sought by Plaintiffs, the cases Plaintiffs cite simply fall within the well-established categories of special relationship, e.g., employers, doctors, educational institutions, parents of minors. In each of these categories, the defendant holds a special relationship with a plaintiff because they are in a position of power over a plaintiff that has been identified as particularly vulnerable and the defendant has specialized ability to prevent injury. *Schieszler v. Ferrum Coll.*, 236 F. Supp.2d 602 (2002); *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 132, 523 S.E.2d 826, 830–31 (2000); *Burdette v. Marks*, 244 Va. 309, 312–13, 421 S.E.2d 419, 420–21 (1992).

Fundamentally, there is a difference between the relationship between Blackwell and Mr. Ferguson and the recognized categories of special relationships. For example, a college with counseling services, resident assistances, and security officers on staff to maintain the safety of students has a far greater capacity to protect students from known, imminent mental health threats than the facts alleged here. Plaintiffs do not cite any case in which an adult stepdaughter owed a special relationship duty to their adult stepfather who has never been deemed incompetent. For good reason—no court has imposed such a duty. Similarly, the cases cited by Plaintiffs do not support their claim that Blackwell assumed a duty by simply agreeing to transport Mr. Ferguson to his doctor's appointment or staying at his house until the appointment date. *See* Am. Compl. ¶ 83; Compl. ¶ 82.

The facts in the cases that Plaintiffs rely upon are not analogous to the allegations here. For example, in *Schieszler*, the defendant was a college who had intimate knowledge of plaintiff's intentions of harming himself because he was found by campus police in his room with bruises on his head which he claimed were self-inflicted. 236 F.Supp. at 605. Additionally, the college knew

that the plaintiff needed anger management counseling and that he sent his girlfriend a note stating that he intended to hang himself with his belt. *Id.* Within the next few days, the plaintiff was found dead in that manner threatened. *Id.* The court reasoned that the college had notice that there was an "imminent probability" that the plaintiff would hurt himself again and had the means to prevent him from doing so. *Id.* at 609.

In contrast, the Amended Complaint does not allege facts sufficient to create a reasonable inference that there was an "imminent probability" that Mr. Ferguson would harm himself. Instead, the Amended Complaint alleges that Mr. Ferguson had been diagnosed with depression and expressed suicidal ideations. Am. Compl. ¶¶ 25–26. There are no facts that would suggest his chronic depression would evolve into an immediate mental health crisis requiring intervention. On the date of Mr. Ferguson's death, Plaintiffs allege only that Blackwell and Mr. Ferguson spread the ashes of her mother under a tree in the backyard and Mr. Ferugson later cried at the kitchen table. Am. Compl. ¶¶ 47–50. Plaintiffs have not alleged that at any point during the days leading up to Mr. Ferguson's death (much less the day in question) that Mr. Ferguson expressed an imminent intent to take his own life.

Plaintiffs do not cite any case where these facts alone are sufficient to create a duty to seek emergency mental health treatment. For good reason: if these facts required Blackwell to seek emergency treatment or an order removing the guns from his home, Plaintiffs (who were equivalently aware of Mr. Ferguson's depression), would have been bound by the same duty (and likewise failed to act).[3] Because there is no special relationship, Blackwell cannot be held liable for her failure to act. And because the assisted suicide statute requires intentional, physical

---

[3] Indeed, Mr. Ferguson's own mental health providers did not deem it necessary or appropriate to involuntarily take away his access to firearms or involuntarily admit him to a psychiatric hospital despite knowing of his suicidal ideations and being in superior position of expertise to assess mental health risks. *See* Am. Compl. ¶ 26.

participation and Plaintiffs have not identified any, Plaintiffs do not state a claim for wrongful death.

Far from identifying a breach by Blackwell, the facts set forth in the Amended Complaint confirm that Mr. Ferguson caused his own death. Blackwell did not shoot Mr. Ferguson. Tragically, he chose to shoot himself. Am. Compl. ¶ 58. Whatever role Blackwell had in the events leading up to his death (i.e. helping him prepare to go to Pennsylvania to meet with doctors about a long-shot procedure), Mr. Ferguson cut off the chain of causation by taking the intentional, physical, and illegal act of ending his life.

## III.     Plaintiffs Have Not Alleged Facts Sufficient to State a Claim for an Injunction/

None of the facts in the Amended Complaint are sufficient to support the requested injunction. In any event, the injunctive relief sought asks this Court to tell the Wythe County Circuit Court how to resolve affirmative defenses related to the distribution of the Estate's assets. Those arguments should be raised in the probate case, not here. They should therefore be dismissed for failing to state a claim and because they are duplicative of already pending claims, for the reasons set forth in Blackwell's Motion. (ECF 37)

## IV.     Plaintiffs Have not Alleged Facts Sufficient to State a Claim for Unjust Enrichment.

Like the injunctive relief claim, the unjust enrichment claim is derivative of the wrongful death claim because without a finding that Blackwell tortiously caused the death of Mr. Ferguson, there is no basis for her to be deprived of her interests under Mr. Ferguson's Last Will and Testament. Like the claim for injunctive relief, this claim is wholly subsumed and duplicative of the claims already at issue in the state court probate matter. Therefore, the unjust enrichment claim should be dismissed or, in the alternative, stayed pending the outcome of the parallel litigation.

## CONCLUSION

The Court should dismiss the Amended Complaint because Kira Ferguson does not have standing to assert claims on behalf of Mr. Ferguson's Estate. Neither Kira nor Shannon Ferguson have standing to bring wrongful death claims in their individual capacity; those claims belong to the Estate. In any event, Plaintiffs' allegations do not rise to the level of an actionable tort, as Blackwell did not owe a duty to Mr. Ferguson, did not breach a duty, and did not cause his death. Virginia simply does not recognize a claim based on the allegations in the Amended Complaint. Plaintiffs have failed to properly allege claims for injunctive relief and unjust enrichment, and, in any event, those claims are barred by the duplicative litigation doctrine.

WHEREFORE, for the foregoing reasons, Blackwell respectfully requests this Honorable Court grant this motion to dismiss and dismiss the Amended Complaint against her with prejudice and grant such other and further relief as this Court deems just and proper.

**SUSAN DOONAN BLACKWELL**

By: /s/ Stewart R. Pollock (VSB # 92466)

Kathleen McCauley, Esquire (VSB # 39028)
Stewart R. Pollock, Esquire (VSB # 92466)
MORAN REEVES & CONN PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 421-6250
Facsimile: (804) 421-6251
kmccauley@moranreevesconn.com
spollock@moranreevesconn.com
*Counsel for Susan Doonan Blackwell*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 20th day of September, 2024 a true and accurate copy of the foregoing *Reply in Support of Motion to Dismiss* was filed electronically on the Western District of Virginia Document Filing System (CM/ECF), served by electronic mail (PDF attachment) and by U.S. mail, postage prepaid, to counsel for plaintiffs and served upon all other counsel of record via electronic mail (PDF attachment) as follows:

Flux J. Neo, Esquire (VSB # 78873)
Flux J. New Law Firm, PLLC
P.O. Box 188
Tazewell, Virginia 24651
Telephone: (276) 988-7996
Facsimile: (276) 644-2622
Office@NewLaw1.com
*Counsel for Plaintiff*

Mary Lynn Tate, Esquire (VSB # 16085)
Tate Law, P.C.
P.O. Box 807
211 West Main Street
Abingdon, Virginia 24212
Telephone: (276) 628-5185
Facsimile: (276) 628-5045
mltate@tatelaw.com
*Counsel for Plaintiff*

Gerard K. Schrom, Esquire (VSB # 39282)
Schrom and Schaffer, P.C.
4 West Front Street
Media, Pennsylvania
Telephone: (610) 565-5050
Facsimile: (610) 565-2980
gschrom@schromandshaffer.com
*Pro Hac Vice Counsel*

**SUSAN DOONAN BLACKWELL**

By: /s/ Stewart R. Pollock (VSB # 92466)

Kathleen McCauley, Esquire (VSB # 39028)
Stewart R. Pollock, Esquire (VSB # 92466)
MORAN REEVES & CONN PC
1211 E. Cary Street
Richmond, Virginia 23219
Telephone: (804) 864-4832
Facsimile:  (804) 421-6251
kmccauley@moranreevesconn.com
spollock@moranreevesconn.com
*Counsel for Susan Doonan Blackwell*